KNAPP vs. ALVORD.

Where a cabinet maker, upon his going abroad on account of ill health, em-
ployed an agent to carry on his business, and gave him the full and entire
possession and control of his property, with a written power to sell all or any
of the furniture, stock and property which might at any time be in his hands,
and to apply the proceeds to the security or payment of a specified note, en-
dorsed by such agent and a third person, or of any other note given in renew-
al of the same, or for which the agent might become responsible; *Held,* that
the possession of the property being connected with the power for the protec-
tion and indemnity of the agent, as well as for other purposes, the agent had
a power coupled with an interest, which survived, upon the death of the cabi-
net maker while he was abroad ; and authorized the agent to sell the prop-
erty, for his protection and indemnity, after such death.

*Held further,* that this equitable mortgage of the property being accompanied
with an actual delivery of the property to the agent, and a continued pos-
session in him, it was not necessary to file it as a chattel mortgage to make
it valid.

A factor has a lien upon the property of the principal in his hands, and may
retain for a general balance, including responsibilities incurred in the execu-
tion of his agency.

THIS case came before the court upon exceptions to the
report of a master, to whom it was referred to take and
state the account of the defendant, as the administratrix of
W. Alvord, deceased, and to report the amount due to the
complainant and to the other creditors of the decedent.
And the only question was as to the right of J. Meads to
retain, out of the estate of the decedent, the amount of two
notes upon which he was endorser ; the estate of the de-
cedent being insufficient to pay all his debts.   The master
decided in favor of the right of Meads to retain, and allow-
ed to the administratrix the amount retained by Meads out
of the proceeds of the property of the decedent, and which
had been so retained with her assent.   Rathbone and Smith,
two of the creditors who had come in and proved their
debts under the decree, excepted to that part of the report.
The facts on which the question arose were as follows :

The decedent, W. Alvord, for some time previous to his
death, carried on the business of a cabinet maker in the city

April 4.

of Albany. In the fall of 1837, Alvord being in bad health, Meads, who had formerly been his copartner, consented to assist him gratuitously in the care and management of his business. In the latter part of November in that year, the decedent having determined to spend the winter at the south on account of his health, applied to Meads to take the general charge of his business during his absence ; to which Meads consented. At that time a note of $1800, drawn by Alvord and endorsed by Whitney and Van Vechten, as his sureties, was held by the Mechanics & Farmers Bank, and was payable on the 9th of December. Alvord also owed another note to H. Rector, for $428,34, endorsed by Meads, and which was payable on the 12th of December, 1837. To provide for the payment of these notes, or others which might be given in renewal thereof, and to enable Meads the better to manage his business during his anticipated absence, Alvord executed an instrument, bearing date the 22d of November, 1837, constituting Meads his agent and attorney to carry on, conduct, and manage his business as a cabinet maker, in his absence ; to purchase and procure stock and materials ; to hire, pay, and discharge workmen ; to collect and receive moneys, &c., and to apply the same in his said business, or to the support of the decedent's family, or to the payment or security of his debts and liabilities. That instrument or power also contained the following clause : " And I hereby expressly authorize and empower the said Meads to sell, assign, transfer and dispose of, at any time or in any manner which he may deem necessary or advisable, all or any furniture, stock, property, notes, claims, or other effects whatsoever, which now are or may at any time be in his hands, belonging to me, and to apply the same and the proceeds thereof to the security or payment, in whole or in part, of a certain note for about the sum of $1800 drawn by me and endorsed by S. Whitney and J. T. B. Van Vechten, and discounted at the Mechanics and Farmers Bank ; or any note or notes which may be given in lieu or renewal thereof or of any part thereof ; and to the payment or security of any note or notes drawn by me, and endorsed or

which may have been endorsed by the said Meads, or for which he may become responsible." The day after the execution of this instrument the decedent attended at his shop and delivered over his account books, &c. to Meads, and put him into actual possession and charge of the shop and business and the property therein ; and Meads then opened or caused to be opened a new cash book in the presence of Alvord. On the same day Alvord gave to Whitney, one of the endorsers upon the $1800 note, a mortgage upon the furniture, lumber, and stock in trade of the said cabinet maker's business, to secure him as the endorser of that note or of any other note which might be given in lieu' or renewal of it ; which mortgage was filed in the clerk's office on the 26th of December thereafter. Alvord left for the south a day or two after the date of these instruments, having left his signatures in blank with Meads to enable him to renew the notes if necessary ; and he died at Savannah, in Georgia, on the 18th of December, 1837.

When the $1800 note became due, on the 9th of December, Meads wrote a new note for the same amount over one of the blank signatures, payable in ninety days, which was also endorsed by Whitney and Van Vechten, and given to the bank in renewal of the note. And as the bank required further security, Meads put his name upon the note as a subsequent endorser. On the 12th of December, when the note of Rector became due, Meads filled up another note over one of Alvord's blank signatures, and endorsed the same himself and gave it in renewal of the old note ; which note was also made payable in ninety days. Both of these renewal notes were duly protested for non-payment, and were afterwards taken up by Meads as endorser. After the death of Alvord, Meads claimed a lien upon the property and assets of the cabinet making business, in his hands, for all responsibilities which he had incurred, as endorser upon these notes or otherwise ; and he continued in the possession and control of the property, with the assent of the administratrix, until April, 1838, when the

1843.

Knapp
v.
Alvord.

property was sold at auction, under his direction, and with her assent. The amount of the notes was retained by him out of the proceeds of the sale, and the residue of the proceeds was accounted for to the administratrix.

*Ira Harris,* for the creditors Rathbone and Smith.

*S. Stevens & O. Meads,* for the administratrix.

THE CHANCELLOR. The personal mortgage to Whitney not being filed till after the death of Alvord, and not being accompanied by an immediate delivery and continued possession of the property, it may be doubtful whether it was sufficient to give Whitney, who was liable to Meads as the last endorser of the note of $1800, a preference in payment over the other creditors of Alvord. This case, however, does not turn upon that question ; as I am satisfied that an equitable lien upon the property was created by the special clause in the power, in reference to the $1800 note and to notes drawn by Alvord and endorsed by Meads. And as that instrument was accompanied by an actual delivery and continued change of possession of the property, until it was converted into money and applied in payment of the two several notes, it was not necessary that the instrument which created that lien should be recorded, under the act of 1833. It is the duty of the court to give such a construction to the language of a written instrument as to carry into effect the intention of the parties, so far as that intention can be collected from the whole instrument and the situation of the parties at the time the writing was executed. And I think no one who reads, this special clause, in connection with the evidence, or rather the admissions, of extrinsic facts which are proper to be taken into consideration, can believe that Alvord did not intend to give to the endorsers of the $1800 note, and to Meads, as the endorser of the Rector note and other notes which he might thereafter endorse, a beneficial interest in the execution of this power, for their security and indemnity. It clearly shows that

1843.

Knapp
v.
Alvord.

Alvord anticipated that it would probably be necessary for Meads to incur further responsibility as his endorser, in the discharge of the duties of his agency, and that something more than an ordinary power of attorney was necessary to protect him from loss. And as the possession of the property was delivered to Meads, in connection with this power to dispose of it for the security and protection of himself and the other endorsers, the property must be considered as pledged to him for that purpose. The power to sell, therefore, was coupled with an interest in the property thus pledged, and survived. (*Bergen* v. *Bennet*, 1 *Caines' Cas. in Err.* 1. *Raymond* v. *Squire*, 11 *John. Rep.* 53.) In the case decided by the supreme court of the United States, (*Hunt* v. *Rousmanier*, 8 *Wheat. Rep.* 174,) there was no actual pledge of the property. But a mere power of attorney was executed authorizing the plaintiff to transfer it in the name of Rousmanier. It was upon that ground, as I understand the case, that C. J. Marshall held that the power was not coupled with any interest in the vessels. And I presume his opinion upon that point would have been different if the power had been accompanied by an actual delivery of the vessels as a pledge for the payment of the debt. But even in that case the court protected the rights of Hunt as an equitable mortgagee of the vessels; though the decision was placed on the debateable ground that a party may be relieved in equity against a mistake of law merely.

Being satisfied that Meads had a lien upon the property in his hands, and a right to retain for the amount of these notes, under the special clause in the written power executed by Alvord, it is not necessary to inquire whether he is not also to be considered as the factor of Alvord; so as to entitle him to retain for his advances and liabilities, entirely independent of this special provision in the power of attorney to him. If the arrangement between Alvord and Meads gave to the latter the character of a factor, there can be no doubt as to his lien upon the property in his hands, and his right to retain for all his advances and re-

sponsibilities in the business with which he was entrusted by his principal. Although it was doubted, previous to the case of *Kruger* v. *Wilcox*, (*Amb. Rep.* 252,) it is now well settled that a factor has a lien and may retain for a general balance ; including responsibilities incurred in the execution of his agency. (*Whit. on Lien*, 103. 2 *Kent's Com.* 640. *Story on Agency*, 34, § 34.) And the case of *Foxcraft* v. *Wood*, (4 *Russ. Rep.* 487,) was probably decided upon the ground that the arrangement under which the business at Birmingham was carried on constituted Foxcraft the factor of Lanning, although he received a fixed salary instead of the usual mercantile commissions for his services.

The decision of the master was right in allowing to the administratrix the amount retained by Meads for the two notes. The exceptions are therefore overruled with costs, and the report of the master is confirmed.