HOUGHTALING adm'r &c. *vs.* MARVIN.

The interest which will authorize the execution of a power, after the death of the principal, must be an interest in the thing itself which is the subject of the power, and not in the proceeds or avails of such thing.

Where there is merely a power given to a creditor to receive a debt, expressly for the purpose of liquidating the claim of the creditor, but unaccompanied by an actual assignment of the debt, or by any security to which the power might have been ancillary, it is revoked by the death of the principal.

But where a person pays or advances money to another, and takes an order upon a third person, as a security for the sum so paid or advanced, to that amount the order will operate to transfer the fund, and will become a power coupled with an interest, which will survive the drawer.

And the fact that the drawer, in giving the order is acting as administrator, does not alter the principle.

But if the holder of such order, after the death of the drawer, pays money to a creditor of the drawer, upon the faith of such order as a security, he does it without authority, and in his own wrong.

THIS action was brought by the plaintiff as administrator *de bonis non* of the estate of Isaac Wilcox, deceased, to recover a sum of money alledged to have been received by the defendant to and for the use of the estate. The intestate was a stockholder in the Cochecton and Great Bend Turnpike Company, and in the spring of 1842, several years after his decease, there was standing to his credit, upon the books of the company, $76 for dividends upon his stock for the two years preceding. On the 6th of April, 1842, Zera E. Hayden, the administrator, drew for the amount upon the treasurer of the company in favor of the defendant, payable to him or his order, and on the 22d of May the defendant acknowledged the receipt of a certificate of deposit in the Broome County Bank, for the amount. On the 25th of the same month he received $75 for the certificate, at the Syracuse Bank. The administrator, Hayden, died on the 18th of April, 1842. It was proved that in March or April, 1842, the administrator talked of going to Cochecton to get the money, and wanted it to pay one Tyler, and that the defendant,

who was his son-in-law, told him that he could get the money more cheaply by writing, and proposed to write for him. The defendant also proved by Tyler that in the spring of 1842, Hayden was indebted to him upon a note past due, and came to him with the defendant, and desired him to wait for his pay until he got the turnpike stock money from Pennsylvania, and said if he could not wait he would get the defendant to send him some money. And that the defendant told him if he could not wait, to send to him, at Baldwinsville, and he would send him up some money, and that he sent down and got $30 or $40, and in June the defendant paid the balance. The whole amount was about $70. The cause was tried before Justice C. Gray, at the Onondaga circuit. The jury, under the charge of the court, rendered a verdict for the defendant, and the plaintiff moved for a new trial, upon a case.

*H. P. Winsor,* for the plaintiff.

*J. Noxon,* for the defendant.

*By the Court,* ALLEN, J. It is very clear, from the evidence, that the bill or order of the administrator Hayden upon the treasurer of the turnpike company, for the dividends upon the stock of the intestate, was not intended as an absolute transfer of the fund to the defendant. It was an authority to him to receive the money; and unless it was a power coupled with an interest in the defendant or some other person, the authority was revoked by the death of the principal, (Hayden,) before the receipt of the money, and the defendant, upon its receipt, became a trustee for the representatives of the estate of Wilcox. The interest which will authorize the execution of the power, after the death of the principal, must be an interest in the thing itself which is the subject of the power, and not in the proceeds or avails of such thing. (*Hunt* v. *Rousmanier's Executors,* 8 *Wheat.* 174.) If there is merely a power to a creditor to receive a debt expressly for the purpose of liquidating the claim of the creditor, unaccompanied however by an actual assign-

ment of the debt or by any security to which the power might have been ancillary, it is revoked by the death of the principal. (*Lepard* v. *Vernon*, 2 *V. & B.* 51. *Paley on Agency, by Dun-lap*, 186. *Story on Bailm.* § 209. *Story on Agency*, §§ 488, 489.)

In this case the legal title to the fund in the hands of the treasurer of the turnpike company was by the order of Hayden vested in the defendant to the amount advanced by him upon the faith of such order. The order itself, without consideration, was a naked power to receive the money for the use of the drawer, and was revocable at his pleasure, or by his death. But if the defendant paid or advanced money to Hayden and took the order as a security for the sum so paid or advanced, then, to that amount the order operated to transfer the fund, and became a power coupled with an interest, which survived the drawer. (*Knapp* v. *Alvord*, 10 *Paige*, 205. *Tate* v *Hilber*, 2 *Ves.* 111.) It can make no difference that Hayden was acting as administrator. Having funds belonging to the estate, at a place distant from his residence, he had the right to transfer them in this manner, with a view to realize them at the point where they were wanted for the purpose of administration. The mere fact that Hayden drew the bill as administrator, in favor of a third person who was willing to discount it, or advance the money upon it, would not, of itself, be evidence of a *devastavit*, or charge the drawer of the bill with the receipt of moneys to the use of the estate. Whether the defendant did advance money to Hayden upon the faith of the security furnished by the bill, and take and rely upon the bill as such security, and if so, to what amount, does not very distinctly appear; although, had that question been put to the jury and they had found in favor of the defendant, to the amount paid by him to Tyler before the death of Hayden, perhaps the verdict could not have been set aside as against evidence. But the amount paid to Tyler, after the death of Hayden, was paid by the defendant without authority, and in his own wrong. He was the son-in-law of Hayden, living in the same neighborhood, and knew of his death. He says that he assisted in the settlement of his es-

Houghtaling *v.* Marvin.

tate. He therefore can not claim to have paid it in ignorance of his death, and to be protected within the principle of 2 *Ves.* 111; and *Smart* v. *Illery*, (10 *Mees. & Wels.* 1.)

It can not be claimed that for that amount the order was a power to the defendant coupled with an interest in himself or in Tyler, the creditor of Hayden. Not for his own benefit, for he had not paid the money to Tyler, nor had he become bound, as surety for Hayden, or otherwise, to pay it to him. Not for the benefit of Tyler, for the reason that there was no attempt to transfer the fund to him, or give him any pledge or lien upon it. Hayden, up to the time of his death, had complete control of this part of the fund, and if he had at any time directed the defendant to pay it to Tyler when received, he could, while living, have revoked the order; and it was revoked by his death. The justice charged the jury that if there was an arrangement between the defendant and Hayden by which he was to draw the money and pay it over to Tyler or retain it for advances made or to be made by him, for Hayden, and if he did draw and pay it over, in pursuance of such arrangement, then he was not liable. That if the jury found that there was such an arrangement the defendant might be regarded as the mere agent of Hayden in drawing and paying over the money, and that even if Hayden had not the right so to direct its disposition the defendant was not liable. This part of the charge was too broad, and should have been qualified. For if, as supposed, the defendant was the mere agent of Hayden to pay the money to Tyler, the agency ceased at the death of Hayden, and a payment after that time was without authority. And for the amount so paid the plaintiff was entitled to a verdict.

Without examining the other questions made upon the argument, a new trial must be granted; costs to abide the event.