LAWRENCE *against* KITTERIDGE.

*Litchfield,*
June, 1852.

Lawrence
*v.*
Kitteridge.

21  577
67   18

It is a principle of international law, recognized in the jurisprudence of this state, that the law of the state or country in which the owner of personal property had his domicil, at the time of his death, is to govern the succession to and distribution of that property, wherever it is situated.

The provision in the statute of this state, regarding the settlement of estates, declaring, that where there are no lineal descendants of the intestate, his " real and personal estate shall be set off equally to the brothers and sisters of the whole blood," &c., does not affect the doctrine above stated; but the purpose of this provision was only to regulate the descent and distribution of the estates of our own citizens.

Therefore, where the intestate, at the time of his death, had his domicil in the state of *Vermont;* there was then due to him from *P,* a citizen of this state, a debt of one thousand dollars; original administration upon the intestate's estate was granted in the state of *Vermont,* and was there nearly completed, the debts due to the estate, other than that due from *P,* being all collected, and all the claims upon it satisfied, when an ancillary administration was granted in this state; there were brothers and sisters of the intestate, of the half blood, living in *Vermont,* but *P,* an inhabitant of this state, was the only brother of the whole blood; under the statute of distribution in *Vermont,* brothers and sisters of an intestate of the whole and half blood are entitled equally to the estate; on an appeal from a decree of the court of probate granting the ancillary administration here, by a devisee and heir at law of *P,* it was held, 1. that the law of *Vermont* governed the distribution of the debt due from *P,* to the intestate's estate; 2. that the course taken by the ancillary administrator here, which was, in pursuance of a decree of the court appointing him, to remit the proceeds of *P's* indebtedness to the principal administrator in *Vermont,* was unexceptionable.

It seems to be settled, that the power of the court granting the ancillary administration, in such case, is a *discretionary* one, depending upon the circumstances and equity of each case, embracing the rights of all interested.

Where a debt was due from an estate in settlement to *M,* and by agreement between *M* and the administrator, the latter made himself personally responsible to *M* for the debt, who took from him a discharge in full; it was held, that the allowance, in the administration account, of this debt, so paid, was unexceptionable.

THIS was an appeal from two decrees of the court of probate for the district of *Norfolk;* one passed on the 29th day of *September,* 1851, and the other, on the 20th day of *October,* 1851. The former directed, that the remainder of the estate of *Cephas Pettibone,* deceased, situate in the district of *Norfolk,* after payment of the debts and charges against that estate in this state, should be transmitted to the administrator on such estate in the state of *Vermont,* there

*Litchfield,*
*June, 1852.*

Lawrence
*v.*
Kitteridge.

to be distributed according to the laws of that state, and not according to the laws of this state. By the latter decree, in the settlement of the administration account, the sum of forty-one dollars, thirty-one cents, was allowed against said estate to *Michael F. Mills,* Esq.

At the hearing before the superior court, *February* term, 1852, the following facts were found.

In relation to the first decree appealed from, *Cephas Pettibone,* the settlement of whose estate was in question, died intestate, leaving no children, nor the representatives of any children, but a brother of the whole blood, *Augustus Pettibone,* Esq., late of *Norfolk,* since deceased, and several brothers and sisters of the half blood, residing in *Vermont,* or elsewhere, out of the jurisdiction of this state. At the time of *Cephas Pettibone's* decease, he was an inhabitant of, and had his domicil in, the state of *Vermont.* All his personal estate consisted of a debt of about one thousand dollars, due from the estate of said *Augustus Pettibone,* who, at the time of his death, and for many years before, resided in this state. Original administration on the estate of *Cephas Pettibone* was granted in *Vermont,* and was in progress, when an ancillary administration was granted in this state, and the first decree appealed from, was passed. At this time, there were no unsatisfied debts due from the estate, here or in *Vermont;* and nothing to complete the settlement of the estate, remained to be done, except the distribution thereof.

As to the last decree, it was found, that at the death of the intestate, there was justly due from his estate to *Michael F. Mills,* Esq., the sum of forty-one dollars, thirty-five cents; and it was agreed between him and *W. C. Kitteridge,* the administrator in *Vermont,* that the latter should become personally responsible for the debt, and give said *Mills* a receipt in full discharge of his claim against the estate; which was done. The object of this arrangement was, to enable the administrator to settle his administration account.

*E. Grove Lawrence,* the appellant, is the devisee, and one of the heirs at law, of said *Augustus Pettibone,* the brother of the whole blood of the intestate, and is thus interested in the distribution of the estate in question.

The case was reserved for the advice of this court as to what judgment should be rendered thereon.

*Hall* and *Peet*, for the appellant, contended, 1. That each state is bound to enforce its own positive law, and protect the rights of its own citizens, notwithstanding this may conflict with the law of other states, or the rights of citizens residing in other states. When such a conflict occurs, our laws are to prevail. *Blanchard* v. *Russell*, 13 *Mass. R.* 1 ; also *Prentiss* v. *Savage*, 13 *Mass. R.* 20. *Tappan* v. *Poor* & al. 15 *Mass. R.* 419. *Sto. Conf. L.* 348. 421. *McCollimer* v. *Smith, Meigs' R.* 342. *Titus* v. *Hobart*, 5 *Mason*, 378. *Ingraham* v. *Geyer*, 13 *Mass R.* 146. *West Cambridge* v. *Lexington*, 1 *Pick.* 506. *Greenwood* v. *Curtis*, 6 *Mass. R.* 358, 377. *Bulger* v. *Roche*, 11 *Pick.* 36. *Smith* v. *Spinolla*, 2 *Johns. R.* 198.

2. That there is, in this state, a positive and imperative statute law, directing as to the distribution of both real and personal estate ; (*Stat.* 357. § 49.) which the court of probate, in this case, disregarded.

3. That where there is a positive law where the property is situated, that law is to prevail as to the distribution of the personal estate, and forms an exception to the general rule, that the law of the domicil of the deceased shall govern, especially if the claimant, who is entitled, by such positive law, shall seek to enforce his rights under it. *Sto. Conf. L.* 346. § 410. 348. § 414. 438, 9. § 424, 5. *Mahorner* v. *Hooe*, 9 *Smedes & Mar.* 247. *Aspden* v. *Nixon*, 4 *How. U. S.* 67. *Kneeland* v. *Ensley, Meigs' R.* 620.

4. That the property, if distributed according to the laws of the state of *Vermont*, should not be transmitted to that state, but distributed here. See cases cited by *Webster, arguendo*, in *Harvey* v. *Richards*, 1 *Mason*, 403. 2 *Kent's Com.* 432 to 434.

5. That the court of probate erred, in allowing the administrator the amount of *Mills's* account ; because he had never in fact paid it to *Mills*. Such a course would open a door to fraud. It would be an inducement for executors and administrators to collude with pretending creditors, and thus speculate out of the estate.

*J. H. Hubbard* and *Peck*, for the appellee, contended, 1. That the distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestate's domicil, at the time of his death, and not by the conflicting laws of the various places where the goods happened to be situated. 2 *Kent's Com.* 428. (4th ed.)

2. That there is no such conflict between our statute and the statute of *Vermont,* as will justify our courts, upon any principle of affording the protection sought by the appellant, in violating the international rule. Both statutes must be reasonably construed, and in subservience to other important rules whose permanency should not be shaken. Our statute of distribution cannot be considered as embracing this case: because it is not to be presumed its makers ever intended it should have such scope, as to make it conflict with the rule, that personal property shall be distributed according to the law of the country of the intestate's domicil; which last named rule is well recognized by us. Whether it be called a part of the law of nations, or a mere rule of comity, it would be the worst policy in the world to violate it, because our own citizens often are the recipients of its favour, under the obedience or respect paid to it, by the other states.

3. That if these principles have validity, then it follows, that the appellant, as a legatee of a brother of the whole blood of the intestate, had no *right*, by our own laws, to claim a preference over the brothers of the half blood, or their representatives; and he is not seeking *protection*, but a donation.

4. That the admistrator here was only ancillary to the principal administrator in *Vermont*, and all the effects here, not wanted for the payment of debts and expenses, were properly decreed to be delivered over to the principal administrator. *Perkins*, admr. v. *Stone*, 18 *Conn. R.* 270. *Atwood* v. *Protection Ins. Co.* 14 *Conn. R.* 255. 2 *Kent's Com.* 429. 430. 431. 432. 433. *Dawes* v. *Head*, 3 *Pick. R.* 128. *Harvey* v. *Richards*, 1 *Mason's R.* 403. *Sto. Conf. L.* 433. § 518.

5. That from the authorities, which hesitate to recommend, that in all cases, the property be transmitted to the principal administrator for distribution, it is apparent, that the question is not one of jurisdiction, but of *judicial discretion;* so

that the right and authority of the court is not disputed. *Sto. Conf. L.* 424.   2 *Kent's Com.* 452, 3.

6. That if the court of probate, in its discretion, had decreed a distribution here, it must have been made according to the laws of *Vermont.*   And no motion or claim was made, by the appellant, before the court of probate, for an order of distribution here, according to the laws of *Vermont ;* nor is the omission to make such order, assigned as error; nor was it made a point in the superior court; and it cannot be claimed as a reason why the appeal should be set aside in this court.

7. That it is found, that the property in *Connecticut* consisted of a debt due to the estate of *Cephas Pettibone* from the estate of *Augustus Pettibone,* deceased; and it was a sound exercise of discretion, on the part of the court of probate, to order it transmitted to the principal administrator.

8. That the other reason assigned for the appeal, is disposed of, by the finding of the court.   The debt is *paid.*

CHURCH, Ch. J.   The first decree of the court of probate appealed from, was predicated upon facts essentially as follows, *viz., Cephas Pettibone,* the intestate, at the time of his death, was an inhabitant of, and had his domicil in, the state of *Vermont,* and was possessed of an estate there; and there was due to him here, from a citizen of this state, a debt of about one thousand dollars.   Original administration upon his estate was granted in the state of *Vermont,* and was in progress, when an ancillary administration was granted in this state.   When the decree appealed from was made, there were no unsatisfied debts due from the estate, here or in *Vermont,* and nothing but a distribution of the estate remained to be done.

The intestate died, leaving brothers and sisters of the whole and half blood; all, excepting the late *Augustus Pettibone,* Esq., of *Norfolk,* who was a brother of the whole blood, residing in *Vermont,* or elsewhere, out of this state; and he had no other heirs at law.   By the laws of *Vermont,* the brothers and sisters of an intestate of the whole and half blood are entitled equally to the estate, under the statute of distribution.

*Litchfield,*
June, 1852.

Lawrence
*v.*
Kitteridge.

Upon the foregoing state of facts, the court of probate for the district of *Norfolk* was of opinion, that the personal estate of *Cephas Pettibone*—the chose in action of one thousand dollars—should be distributed according to the laws of the state of *Vermont*; and that this could better be done, and without injury to any citizen of this state, by transmitting the money to the administrator there, and to the jurisdiction of the court of principal administration, than to order a distribution of it here. And therefore, the decree appealed from, was made.

The appellant, who is the representative of *Augustus Pettibone*, the brother of the whole blood residing in the district of *Norfolk*, objects to this decree, and appeals from it. He claims, that the assets or money in the hands of the administrator here, should have been distributed here, and according to the laws of this state, which prefer a brother or sister of the whole blood to one of the half blood.

1. We had supposed, that the law of the country of the domicil of an intestate governed and regulated the distribution of his personal estate; and that this was a principle of international law, long ago recognized by jurists in all enlightened governments, and especially recognized by this court, in the recent case of *Holcomb* v. *Phelps*, 16 *Conn. R.* 127. 133. in which we say, that, " It certainly is now a settled principle of international law, that personal property shall be subject to that law which governs the person of the owner, and that the distribution of and succession to personal property, wherever situated, is to be governed by the laws of that country where the owner or intestate had his domicil, at the time of his death." *Sto. Conf. Laws,* 403. *in notis.* § 480. 465. 2 *Kent's Com. Lect.* 37. 2 *Kaime's Prin. Eq.* 312. 826. *Potter* v. *Brown,* 5 *East,* 124. *Balfour* v. *Scott,* 6 *Bro. Parl. Cas.* 550. (*Toml.* ed.) *Bempde* v. *Johnstone,* 3 *Ves.* 198. *Pepon* v. *Pepon, Amb.* 25. 415. *Guier* v. *O'Daniel,* 1 *Binn.* 349. *in notis.* *Harvey* v. *Richards,* 1 *Mason,* 381.

It is not necessary that we should now examine the reasons, whether of public policy or legal propriety, which have led the tribunals of civilized nations to relax from antiquated notions on this subject; some of these are well considered, by Judge *Story,* in the case of *Harvey* v. *Richards,* 1 *Mason,*

381. and by Chancellor *Kent*, in his *Commentaries, vol.* 2. *Lect.* 37.

*Litchfield,*
June, 1852.

Lawrence
*v.*
Kitteridge.

It is true, that it is in the power of every sovereignty, and within the constitutional powers of the states of this *Union*, to repudiate this salutary doctrine, in its application to themselves, or to modify it, for what they may suppose to be the protection of their own citizens; but without some peculiar necessity, it cannot be supposed, that any well regulated government will do it. It was claimed in argument, in this case, that this had been done in this state, and by the provision of the 49th section of our statute for the settlement of estates, (*Stat.* 357.) by declaring, that when there are no children, &c. of an intestate, his "real and personal estate shall be set off equally to the brothers and sisters of the whole blood." But it was not the purpose of this provision to disregard the universal and salutary doctrine of the law to which we have referred, but only to regulate the descent and distribution of the estates of our own citizens. This provision of our statute is not peculiar to ourselves; a similar one, we presume, may be found in the codes of other states; at least, imperative enactments exist in every state, directing the distribution of estates; but none of them are intended to repeal the law of the domicil, in its effect upon the personal estate of the owner. The controversy, in the case of *Holcomb* v. *Phelps*, arose under the same section of our law as does the one now under consideration, and the result of that case must settle this question, if it be one.

There are cases, in which the law of the domicil has been modified or restrained, in its full operation, for what courts have supposed to be the proper protection of the rights of the citizens of their own states; but these are generally confined to cases in which creditors are, in some way, interested, under insolvent proceedings, assignments, or bankrupt laws, and never, we believe, are extended to mere cases of distribution, as here claimed. *Sto. Conf. L.* 277. § 337.

The views of the court of probate in regard to the operating law of distribution, in this case, were correct; and the remaining question, in this part of the case, is, whether the decree which followed, directing the money in the hands of the administrator here, to be transmitted to the proper jurisdiction in *Vermont*, for distribution, should be reversed; or

*Litchfield,*
June, 1852.

Lawrence
*v.*
Kitteridge.

whether the court here, should, by its own decree, have made distribution according to the laws of *Vermont?*

There was but one estate to be settled; and this was, in legal view, attached to the person of the owner, at the time of his death, so far as it was personal. There were two administrations; one original and principal in *Vermont*; the other ancillary and subordinate, in this state. *Perkins* v. *Stone,* 18 *Conn. R.* 270.    *Sto. Conf. L.* 423.

The creditors of this estate, and all persons having claims upon it, in this state and in *Vermont,* were satisfied, and nothing remained to be done, but the distribution of it among those, who, by the laws of the state of *Vermont,* were entitled to it. Why were two distributions of this one estate necessary? Without special reasons requiring a different course, there would seem to be a propriety, that the consummating act in the settlement, should have been done, by the tribunal exercising the principal jurisdiction, and that the money accidentally and temporarily in this state, should be transmitted thither, for that purpose. Otherwise, there might have been conflicting decrees, and the courts of the different jurisdictions, upon varying proofs, might have found different persons entitled to take as distributees. The law of *Vermont* was the governing law, and known to the courts of that state, as a matter of *certainty;* but here, to be ascertained only by proofs, as a matter of *fact.*

There are cases in which the courts of the ancillary administration have retained the assets, and distributed them according to the law of the domicil; and others, in which they have been transmitted to the principal and original jurisdiction for final action. *Harvey* v. *Richards,* 1 *Mason,* 381.    *Richards* v. *Dutch,* 8 *Mass. R.* 506.    *Dawes* v. *Boylston,* 9 *Mass. R.* 355.

We do not think it to be a legal consequence, because distribution should be made according to the law of the domicil, that the assets should be transmitted for distribution; the courts of the ancillary jurisdiction may distribute them. *Stevens* v. *Gaylord,* 11 *Mass. R.* 256.    *Dawes* v. *Heath* & al. 3 *Pick.* 128.    *Bruce* v. *Bruce,* 2 *Bos. & Pull.* 229.    *Balfour* v. *Scott,* 6 *Bro. Parl. Cas.* 550.    *Hog* v. *Lashley, Id.* 577.    *Drummond* v. *Drummond, Id.* 601.    *Somerville* v. *Somerville,* 15 *Ves.* 791.

But it seems now to be settled, that the power of the court granting the ancillary administration is a discretionary one, and should depend for its exercise upon the circumstances and equity of each case. This is a salutary principle, and can work no harm; but in its application, the citizens of the state of the ancillary administration and their rights, are not alone to be regarded, but also the rights of all interested. *Harvey* v. *Richards*, 1 *Mason*, 381. *Dawes* v. *Head*, 3 *Pick.* 128. *Topham* v. *Chapman*, 1 *Rep. Const. Court*, S. C. 292. 2 *Kent's Com. Lect.* 37. *Sto. Conf. L.* 424.

We see no good reason to be dissatisfied with the application of this principle and the exercise of this discretion, by the court of probate, in the decree appealed from. The original administration was granted, by a court in a sister state near by; and within one or two days' reach of the appellant, who represents the only person interested in the estate here! All the other interested parties—and there were several of them—resided in the state of *Vermont*, or elsewhere, where they could, with equal convenience, protect their interests, and receive their portions of the distributed estate, as if the distribution had been made by the court of probate for the district of *Norfolk*. A greater inconvenience and expense has been avoided, by the transmission of the money to *Vermont* for final distribution, than if it had been retained here. And still we do not say, that we would, even under the circumstances of this case, have reversed an order of distribution, if made by the court of probate here.

2. The objection to the allowance of forty-one dollars to the administrator, for payment of a debt due from the estate to *Michael F. Mills*, Esq., and the appeal from the order making that allowance, is frivolous.

The estate owed the debt, and the administrator has satisfied it, by substituting his own private responsibility, which the creditor has received as payment in full.

The superior court is advised, that the orders and decrees of the court of probate should be affirmed.

In this opinion the other judges concurred—WAITE, J. with some qualifications.

Decrees affirmed.