utor for selling a piece of real estate. Over the latter item there was no contest, as it was voluntarily withdrawn as soon as objection was filed.

In an estate composed of personal property and real estate aggregating about $18,000, and concerning the management of which considerable friction arose, and in view of the fact that there were seven different people to contend with, six of whom objected to various items of the account and precipitated a very stubborn contest, resulting in no material change in the account, and also in view of the evidence of Mr. Calder that he agreed with the executor that the sum paid him should be in full for his services, including the accounting and the contest, and that no application would be made for a further allowance, or costs, I hold and decide that the sum of $520 was reasonable, and the same is hereby allowed, and objection thereto overruled.

The account shows that Mr. Ackroyd, the agent who sold the real estate, was paid $126, and the voucher signed by him shows that he received $125. There is a discrepancy of $1 in favor of the executor that she was unable to account for definitely on the witness stand. The account must therefore be surcharged with the same.

During the trial objection was made in open court to the allowance of commissions to the executor, partly on the ground that work which she should have done herself she employed her attorney to do, and on the ground that, there being no power of sale under the will she should not have commissions on the proceeds of the real estate that passed through her hands. On a careful review of the evidence, keeping in mind her conduct and management of the entire estate, as well as the difficulties with which she was constantly confronted, reference to which has already been made, and no specific act of misconduct having been shown, no careless or negligent handling of the moneys of the estate having been established, and no commingling thereof with her personal funds, and no dealing with the property as if it were her own, I feel that on the whole the estate was as well managed as is usual among representatives similarly situated; and, finding no legal reason for denying commissions, I allow the same.

Decreed accordingly.

(92 Misc. Rep. 109)

### In re COUDERT.

(Surrogate's Court, New York County. October, 1915.)

1. WILLS ⬤⟳436—EFFECT—DOMICILE.

Where one domiciled in France owned personalty in New York, the fact that the will, executed in Paris, was proven in New York, does not make New York the principal place of administration, but the instrument must be construed according to French law.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 947–950; Dec. Dig. ⬤⟳436.]

2. WILLS ⬤⟳436—CONSTRUCTION—FOREIGN WILLS.

Where the will of one last domiciled in France, where the will was executed, who owned personalty in New York, created a universal suc-

cession, the rights of the parties must be governed by the French law, for personalty follows the law of the place of the owner's domicile.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 947–950; Dec. Dig. ☞436.]

In the matter of the judicial settlement of the account of proceed-ings of Frederic R. Coudert, as executor of the last will and testa-ment of Alcime Baillard. Account settled.

Coudert Bros., of New York City, for executor.

FOWLER, S. The will of Alcime Baillard, a native of France, dying in France, was duly proved in this jurisdiction. The will in question was executed in Paris, but in conformity with the law of New York. The property of M. Baillard was, at his death, in New York, where for some portion of his life testator had sojourned. The will is in the French tongue and technically it corresponds with the requirements of the law of France regulating last wills and tes-taments. It appoints the daughter of testator, Mme. Carassale, the wife of the consul for Uruguay at Nice, "universal legatee," subject, however, to certain life legacies or usufructs for the lives of legatees:

"Je lègue à ma fille Georgine Baillard, épouse de Monsieur Americo Caras-sale, consul de l'Uruguay à Nice, avec lequel elle demeure dans la dite ville, tous les biens meuble et immeuble, droits et actions mobilières et immo-bilières qui m'appartiendront lors de mon décès et composeront ma succession, en quoi qu'ils puissent consister et en quelques endroits qu'ils soient dûs et situés, sans aucune exception, ni réserve, je l'institue en conséquence ma légataire universelle à charge de supporter et d'exécuter les legs d'usufruit et rente viagères constituées au cours de présent testament."

Mr. Coudert, the sole executor, having now administered the estate in New York and having instituted this proceeding, presents to us a decree providing for the remittance of the balance, now held by executor for distribution, to Madame Cassarale, the universal legatee of M. Baillard, without bonds; the same to be held by her in con-formity with the law of the testator's last domicile, viz., France. If the will is to be construed according to the law of this state, Madame Cassarale might be held to be a trustee for the life beneficiaries men-tioned in the will. This construction is not desired and not pressed.

[1, 2] What, then, is the proper construction of this will? It must be remembered that it is a will of a Frenchman last domiciled in France. The administration has taken place here thus far simply because the property of the deceased happened at his death to be in this jurisdic-tion. Such property is altogether movable or personal property. Or-dinarily "mobilia sequuntur personam." The fact that the will in question was proved in this jurisdiction does not necessarily make this the principal place of administration. The testator was domiciled in France when he died, and his movable property necessarily occupies the situs of the testator's last domicile. France, therefore, should be regarded in this case as the principal and not the ancillary place of administration.

It should not be forgotten that there is under this will a universal succession. Now, if we have regard to the law of France, a "uni-versitas juris" or a universal succession is always governed by the

lex loci domicilii. Thèse, par le Docteur en droit, Marion, p. 13 et seq. But independently of the principle just stated, a will of movables is generally, in the absence of other intention, to be governed by the laws of a testator's last domicile. Westlake, Private International Law (5th Ed.) 170; Bentwich, Domicile and Succession, 101; Dicey, Conflict of Laws (2d Ed.) 679; Parsons v. Lyman, 20 N. Y. 103; Despard v. Churchill, 53 N. Y. 192. Thus it is that where children are entitled to legitim by the law of testator's last domicile any provision in the will in derogation of legitim must give way to the law of testator's last domicile. Thornton v. Curling, 8 Sim. 310; Hog v. Lastaley, 6 Bro. P. C. 377; Kilpatrick v. Kilpatrick, 6 Bro. P. C. 58; Munro v. Douglas, 5 Mads. 394. To give effect to the principle indicated, administration in a foreign jurisdiction will sometimes be stayed in order to await and abide by the construction of the courts of the last domicile.

But we are not without domestic authority on these and similar points. That the decree in this case should provide that the surplus be remitted to the universal legatee to be disposed of by her in accordance with the will and the law of the testator's last domicile I have no doubt. Despard v. Churchill, 53 N. Y. 192; Hardenberg v. Manning, 4 Dem. Sur. 437. While it may be that there is a substitution under French law (corresponding to the trusts known to our law), of which substitution the usufructuary legatees are the beneficiaries, that is for the French law to determine. I am also of the opinion that the universal legatee should not be required to give security.

Settle decree accordingly.