In the Matter of the Estate of EMILE TABBAGH, Deceased.

Surrogate's Court, New York County, March 19, 1938.

*Barber, Fackenthal & Giddings* [*Bruce E. Grunden* and *Frederic E. Emmerich* of counsel], for the executors, petitioners.

*Milbank, Tweed, Hope & Webb* [*Thomas A. Ryan* and *William Parsons* of counsel], for the Chase National Bank of the City of New York, trustee.

*Hollander & Bernheimer*, for Marie Tabbagh, widow.

*Herman B. Goodstein*, special guardian of infants.

DELEHANTY, S.   Deceased was a resident of France.   He died on December 31, 1933.   On February 15, 1932, he executed a will designed to dispose of that part of his property which was situated in the United States.   Therein he declared his purpose that the instrument be construed and his " American Estate " be administered according to the laws of the State of New York.   This will was admitted to probate in this court.   The executors are now accounting for their administration of the assets covered by it.

Paragraphs second and third of the will provide:

" *Second.* Any and all the bonds stocks debentures and similar securities constituting part of my American Estate (but not intending or including cash on hand or on deposit in any account with

banks or other institutions, and not including any merchandise, accounts receivable notes or other obligations evidencing moneys due from individuals or the result of sale of merchandise or business transactions) I do give and bequeath to the Chase National Bank of the City of New York, in trust however for the following uses and purposes that is to say:

" To hold invest and reinvest the same and to receive and collect the rents profits issues and incomes thereof and to pay over the net proceeds of such rents profits issues and incomes to my dear wife Marie during her lifetime.

" *Third.* Upon the death of my wife or at my death if I should survive her I do give and bequeath the entire corpus and principal of said trust hereby established, being the entire assets in paragraph ' second ' hereof identified and described, equally absolutely to and between my dear sons Maurice and Henri."

Testamentary trusts are said to be prohibited under the laws of France. Hence a declaration of the validity of the trust is sought here. The construction and validity of the provisions of the will disposing of deceased's assets in the United States are to be determined by the laws of this State. (Dec. Est. Law, § 47; Pers. Prop. Law, § 12-a.) It is clear that under the laws of this State a valid trust was created.

Under the provisions of paragraph second a specific gift in trust was made. A question is presented concerning the assets which are to constitute the principal of the trust. On January 22, 1926, deceased executed a customer's loan agreement with Equitable Trust Company of New York. This was in effect when he died. Pertinent terms of this agreement provide: (a) That all property delivered, conveyed, transferred or assigned to the bank as security for any indebtedness was to be held by it as security also for any other indebtedness to the bank; (b) that the bank was to have a lien to the extent of any debt on all property delivered to it for safe keeping or otherwise; and (c) that upon failure to pay any indebtedness the bank could sell any securities in its possession and could apply the proceeds to payment of the debt. On February 15, 1932, the date of execution of his will, deceased had a custody account with the bank in which were securities of the face value of $99,000. On April 11, 1933, deceased borrowed from the bank the sum of $15,000 and gave the bank his note in that sum, payable six months from date. On November 1, 1933, deceased gave the bank a renewal note for the same amount, payable on February 1, 1934. On November 20, 1933, deceased requested the bank to send him a statement of his securities in his custody account, showing their market value. He requested the bank also to advise him what

securities should be sold to satisfy his loan. The bank sent the requested information to deceased. Thereafter, on December 22, 1933, deceased wrote to the bank as follows:

" I am in receipt of your letter of the 22nd November and I have received also the advice of your Investment department re the securities which should be sold to satisfy my loan $15000.

" You will oblige to sell for my a/c at the market price the following securities:

" $5000 Government of Argentine External 6% gold bond State Railway Issue of 1927

" $5000 Republic of Cuba public works 5 1/2% gold bond due June 1945

" $5000 City of Helsingfors 6 1/2% gold bond due April 1960

" $5000 State of New South Wales 5% external sinking fund gold bond due April 1958.

" $3000 Kingdom of Norway 5 1/2% external gold bond due June 1965.

" I am sure that you will make your best in order to obtain the best prices for these securities and I will appreciate very much your help in this matter.

" The proceeds please affect to above loan and charge my ordinary a/c with the balance so that the loan will be settled."

As stated, deceased died on December 31, 1933. The bank received his letter of December 22, 1933, on January 5, 1934, and on the same day sold the securities specified in his letter. The net proceeds of the sales amounted to $14,715.62. These proceeds were applied by the bank in reduction of the loan. The balance of the loan remaining unpaid was charged against deceased's banking account. The account here states that the sales were made before the bank was notified of deceased's death. The stipulation of facts does not cover this point, but the result reached herein makes ascertainment of this fact unimportant.

The question presented is whether the gift in trust was adeemed to the extent of the securities sold after the death of deceased.

The trustee contends that since title to the securities was in deceased at his death such title vested at once in it as trustee under the terms of the gift (*Matter of Columbia Trust Company*, 186 App. Div. 377) and so the executors are obliged to extinguish the debt secured by the property bequeathed. The trustee argues that the direction to sell did not constitute an ademption because there was no agency and that even if the relation of agency had existed during deceased's lifetime the power to sell was not coupled with an interest and was, therefore, revoked by the death of deceased. The trustee contends that the situation is the same as though no direction to sell had been given by the deceased.

As against this contention argument is made that the direction to sell was coupled with an interest and that the power of sale survived the death of deceased. The basis of this argument seems to be that as the power was irrevocable the transaction was completed so far as deceased was concerned, that no act of his could thereafter prevent his title from being divested, and that the donee of the gift has no greater right. It is argued also that in the circumstances here the giving of the direction is itself an indication of deceased's intention to revoke the legacy so far as the securities sold are concerned and that this intention governs. It is argued further that the bequest of the particular securities sold has failed because of the provisions of section 40 of the Decedent Estate Law. Finally it is argued that the donee of the legal title to the gift, the trustee, took the securities subject to the amount of the loan pursuant to section 38 of the Decedent Estate Law.

If a power of sale is to survive the death of the principal it must be coupled with a vested interest or right in the subject-matter of the power as distinguished from an interest in the proceeds of the sale merely. (*Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 477; *Farmers' Loan & Trust Co.* v. *Wilson,* 139 id. 284; *Weber* v. *Bridgman,* 113 id. 600; *Matter of Grapel* v. *Hodges,* 112 id. 149; *Oatman* v. *Watrous,* 120 App. Div. 66; *Hoffman* v. *Union Dime Savings Inst.,* 109 id. 24; *Stevens* v. *Sessa,* 50 id. 547; *Matter of Weber,* 163 Misc. 81.) If a power is given as security for a debt and the property which is the subject-matter of the power is delivered or assigned with the power to the creditor as a part of the same transaction, the power is coupled with an interest in the hands of the creditor and is irrevocable. (*Terwilliger* v. *Ontario C. & S. R. R. Co.,* 149 N. Y. 86; *Hutchins* v. *Hebbard,* 34 id. 24; *Babrowsky* v. *United States Grand Lodge,* 129 App. Div. 695; *Stevens* v. *Sessa, supra; Houghtaling* v. *Marvin,* 7 Barb. 412; *Knapp* v. *Alvord,* 10 Paige, 205; *Hunt* v. *Rousmanier,* 8 Wheat. 174.) The initial customer's loan agreement executed by deceased was in legal effect a delivery to the bank of the property in the custody account of deceased as security for any obligation of deceased to the bank. When the loan was made the bank, under the authorities last cited, had a power to sell coupled with an interest which was irrevocable and which survived the death of deceased. Pursuant to the tenor of the loan agreement the bank had the right to sell the securities after the death of deceased and to apply the proceeds to the payment of the loan.

The letter of deceased stands on a different footing. So far as the facts indicate the bank had not demanded that the securities be sold when the letter was written. Nor had deceased been called

on to pay the note at that time. The authority to sell given in the letter was not for the purpose of giving security for the payment of the note. The bank already had the securities but until the due date of the note or the occurrence of one of the events referred to in the loan agreement it was without authority to sell. The letter was a voluntary act on the part of deceased and was without the consideration necessary to support an irrevocable power. (*Terwilliger* v. *Ontario C. & S. R. R. Co., supra; Houghtaling* v. *Marvin, supra.*) Deceased could have revoked the order to sell at any time before his death. The order contained in the letter was, therefore, revoked at his death.

The giving of the direction to sell did not constitute a revocation of itself. The status of the subject of the gift as it exists at the death of the deceased is the guide — not the intention of deceased. (*Matter of Brann*, 219 N. Y. 263.) If deceased had contracted to sell the securities in question and his death had intervened before the agreed delivery date there would be no revocation of the bequest but the securities would pass subject to the same remedies on the part of the purchaser for specific performance or otherwise as the purchaser would have had against deceased. (Dec. Est. Law, § 37.) Certainly if a firm contract to sell would not have constituted a revocation the mere direction to sell in the circumstances here shown does not revoke the bequest. This holding that the power to sell based only on the letter of deceased was revoked by the death of deceased requires the holding that section 40 of the Decedent Estate Law does not apply.

The question here turns on the original pledge of the securities and the pertinence thereto of the provisions of section 38 of the Decedent Estate Law. This section was taken from the Revised Statutes, part 2, chapter 6, title 1, article 3, section 46 (2 R. S. 64, § 46). It provides:

" § 38. Charge or incumbrance not a revocation. A charge or incumbrance upon any real or personal estate, for the purpose of securing the payment of money, or the performance of any covenant, · shall not be deemed a revocation of any will relating to the same estate, previously executed; but the devises and legacies therein contained, shall pass and take effect, subject to such charge or incumbrance."

Prior to the enactment of the Revised Statutes a debt secured by the mortgage of real property, or a debt secured by a pledge of personal property, was required to be paid out of the general estate and a devisee or legatee of the property mortgaged or pledged took it free of the debt or charge. (1 Underhill on the Law of Wills,

§ 393; *Taylor* v. *Taylor*, 3 Bradf. 54; *Bothamley* v. *Sherson*, L. R. [1875] 20 Eq. 304; *Rogers* v. *Rogers*, 1 Paige, 188; *Johnson* v. *Goss*, 128 Mass. 433.) The common-law rule in New York was changed in respect of a devise of real property subject to a mortgage and now a devisee takes mortgaged real property cum onere. (Real Prop. Law, § 250.) In the Massachusetts case cited there was a specific bequest of stock which had been pledged by the testator for the payment of a debt. The common-law rule was applied and the court held that the stock was entitled to exoneration to the amount of the debt out of the general estate of the deceased. The Massachusetts rule appears to have been changed by statute at least as to real property. (*Doane* v. *Bigelow*, [Mass.] 200 N. E 121.) No New York case dealing specifically with the application of the provisions of section 38 to a pledge of securities specifically bequeathed has been cited by counsel. The trustee cites *Wright* v. *Holbrook* (32 N. Y. 587); *Matter of Noyes* (3 Dem. 369); *Cochrane* v. *Hawver* (54 Hun, 556), and *Matter of Adams* (159 Misc. 827) as authority for applying by inference the common-law rule that the specific legatee is entitled to exoneration at the expense of the general estate. In the *Wright* case the statute involved was 1 Revised Statutes, 749, section 4, now section 250 of the Real Property Law, to which reference has already been made. The question in that case was whether a note of the testator representing the balance of the purchase price of the real property devised should be paid out of the general estate. It was held that the statute did not apply to an equitable lien growing out of a contract of the nature under consideration and that in the case of unpaid purchase money the devisee was entitled to have the balance of the contract price paid out of the personal property. In the *Cochrane* case the same statute was under consideration. There the mortgage on the property devised was given by the testator not to his creditor but to a person who was his surety because of accommodation indorsements. It was held that the transaction did not come within the statute. The devisee took the property free of the lien. In the *Noyes* case the question was whether the real property passed to a devisee clear of taxes and assessments that were due at the date of death. At the time of the decision in that case section 250 of the Real Property Law covered only mortgage incumbrances. The *Noyes* case (decided in 1855 after the Revised Statutes became effective) held that the common-law rule respecting real property was still in effect as to incumbrances other than mortgages. The *Adams* case is a decision by Surrogate HENDERSON. In that case the will made a specific gift of rings which had been placed in pawn by the testator during his lifetime. Surrogate HENDERSON held

that as the amount loaned on the pawned rings was not a debt of the testator he was under no obligation to repay the amount received by him and the legatee was bound to pay the amount necessary to redeem the rings. In none of the cases so cited by the trustee is there any reference to the provisions of section 38 of the Decedent Estate Law.

*Wagner* v. *Thieriot* (203 App. Div. 757; affd. on opinion below, 236 N. Y. 588) is similar to the *Adams* case. The question arose over the amount of loans upon the security of life insurance policies. The widow, beneficiary of the policies, claimed that the loans were ordinary debts of the insured and were payable out of his estate. The court held that under the insurance loan contract the insurance company could not have filed a valid claim against the estate and that since deceased was under no obligation to pay the loan to the company it was not a debt to be paid by the estate. *Matter of Hayes* (252 N. Y. 148) followed *Wagner* v. *Thieriot* in holding that these loans did not create debts but represent advances on the amount that the insurance company will ultimately be required to pay. No reference is made in these cases to the provisions of section 38 of Decedent Estate Law.

Note should be taken of a Missouri case decided in 1926 (*Hannibal Trust Co.* v. *Elzea*, 315 Mo. 485; 286 S. W. 371). There the court had under consideration a statute which is identical in language and punctuation with section 38 of Decedent Estate Law. The particular subject-matter to which the statute was applied in the cited case was real property conveyed by deed of trust to secure a note of the deceased. The court held that the devisee took the property subject to the incumbrance. There as here the incumbrance was put upon the subject-matter of the specific gift after the date of the will containing the gift. The court commented on the fact that the testator must be held to have known when he made the loan that the statute provided that a charge or incumbrance upon any real or personal estate for the purpose of securing the payment of money would not revoke the will and that a devise or legacy in such will would take effect subject to the incumbrance.

Here the will was dated in 1932. The loan was made in 1933. The death occurred in the same year. Section 38 of the Decedent Estate Law operates to prevent the revocation of the gift by reason of the pledge of the securities. It operates as well to make the gift subject to the incumbrance thereon. Here the statute precisely fits the facts. Perhaps if the will had been dated after the making of the loan a further question would be presented. There seems no occasion for denying to this statute its plain meaning. Accordingly it is held that the specific gift of the securities is subject

to the payment of the loan indebtedness secured thereby and that such indebtedness is not payable primarily out of the remaining assets of deceased not specifically bequeathed.

Submit, on notice, decree construing the will and settling the account accordingly.