## In the Matter of the Accounting of Bankers Trust Company, as Executor of Edward T. Cook, Deceased.

Surrogate's Court, New York County, June 22, 1953.

*Henry M. Noe* and *J. Taylor Bigbie* for executor, petitioner.

*Nathan M. Padgug,* special guardian for Jane E. Cook, an infant, respondent.

Collins, S.  The special guardian representing the only child of the testator has interposed objections which frame the question for decision in this proceeding for the settlement of the account of the executor.  The deceased, an American citizen, maintained his residence in Havana, Cuba, and died domiciled in that jurisdiction in 1946, some two years after the execution of his will which has been admitted to probate in this court as that of a nonresident.  The laws of Cuba fix the status of a child as the forced heir of the parent entitled to *legitime* in two thirds of the estate (Civil Code Cuba, art. 808).  The testator ignored this restriction on his right to bequeath and left his residuary estate in trust for his wife for life with instructions for limited invasions of principal for her benefit.  He coupled with this disposition a direction that his will was to " be construed under the laws of the State of New York and probated in the New York Courts ".  Relying upon the provisions of the

Cuban Code, the special guardian challenges the entire testamentary program and objects to credits claimed for payments made by the executor in conformity with the provisions of the will. The issue thus presented is a case of first impression in the courts of this State.

Section 47 of the Decedent Estate Law specifically permits the adoption of New York law by nonresident testators as the charter of authority for their wills. It provides in part: " Whenever a decedent, being a citizen of the United States or a citizen or a subject of a foreign country, wherever resident, shall have declared in his will and testament that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws." In this proceeding the court is asked to say whether this provision affords residents of other jurisdictions a means of escaping onerous restrictions on the testamentary disposition of property imposed by the laws of their own domiciles. The answer is that the statute does exactly that when the estate left by the testator is subjected to control by the courts of this State as it was in this case by the selection of a New York fiduciary, by the testamentary transmittal of the property to this jurisdiction and by the direction as to the governing law.

To make clear the reasons for the conclusion stated it will be necessary to analyze in some detail a number of cases decided prior to the passage of the quoted section of the statute which became law as chapter 244 of the Laws of 1911 and took its present form with the enactment of minor amendments in chapter 186 of the Laws of 1918. In the course of its investigation the court has discovered no legislative documents explaining the circumstances which brought about the adoption of the measure and no case of significance was decided prior to the date of its passage which suggested the necessity for remedial legislation. The concept embodied in the statute was not foreign to the common law, however, and to that extent the section was declaratory of the rule as it had theretofore existed. (*Matter of Chadwick,* 109 Misc. 696.)

It is commonly accepted that the law of the domicile of the testator governs the disposition of his personal property but most of the cases from which this principle has emerged had nothing to do with situations in which the deceased had evidenced a contrary intention and, as a result, sight is sometimes lost of the fact that the choice of which law should control always remained with the testator. As early as *Harrison* v.

*Nixon* (9 Pet. [U. S.] 483) the Supreme Court had said, STORY, J., writing (p. 504): "In regard to personalty in an especial manner, the law of the place of testator's domicil governs in the distribution thereof, and will govern in the interpretation of wills thereof, unless it is manifest, that the testator had the laws of some other country in his own view."

The same rule was enunciated by the Court of Appeals in *Chamberlain* v. *Chamberlain* (43 N. Y. 424, 433): "Personal property has no locality, and therefore the law of the domicil of the owner governs its transmission, either by last will and testament or by succession in case of intestacy. (2 Kent Com., 429; *Moulton* v. *Hunt,* 23 N. Y. 394; *Lawrence* v. *Kitteridge,* 21 Conn., 577.) But if, within the *lex domicilii,* a will has all the forms and requisites to pass the title to personalty, *the validity of particular bequests will depend upon the law of* the domicil of the legatee and *of the government to which the fund is by the terms of the will to be transmitted for administration, and the particular purposes indicated by the testator."* (Italics supplied.)

And see Page on Wills (Lifetime ed., § 1643), where it is pointed out that laws preventing the exclusion of a spouse or child from sharing in the estate are " said to be restrictions upon the capacity of the testator to give; and therefore * * * governed by the laws of his domicile as to gifts of personalty, *in the absence of statute."* (Italics supplied.)

And in *Matter of Coudert* (92 Misc. 109, 111) Surrogate FOWLER, late of this court, referred to the condition in the following terms: "But independently of the principle just stated, a will of movables is generally, in the absence of other intention, to be governed by the laws of a testator's last domicile. Westlake, Private International Law, (5th ed.) 170; Bentwich Domicile & Succession, 101; Dicey Conflict of Laws (2d ed.) 679; *Parsons* v. *Lyman,* 20 N. Y. 103; *Despart* v. *Churchill,* 53 id. 192."

In the light of this authority even without the clear direction supplied by section 47, the court would have had to uphold the validity of the challenged bequest for the presence of the estate in this jurisdiction and its submission to our laws was not the result of accident but of design upon the part of the testator. The result here reached is not in conflict with the authorities cited by the special guardian. In neither of the cases upon which he principally relies, *Trimble* v. *Dzieduzyiki* (57 How. Prac. 208) and *Matter of Cruger* (36 Misc. 477), both of them decided long before the enactment of section 47 of the Decedent

Estate Law, nor in the English cases of *Thornton* v. *Curling* (8 Sim. 310); *Hog* v. *Lashley* (6 Bro. P. C. 577); *Kilpatrick* v. *Kilpatrick* (6 Bro. P. C. 584), and *Munroe* v. *Douglas* (5 Madd. 379) did it appear that the testator had expressly selected the law of a jurisdiction other than his domicile to govern the provisions of his will. Consequently the rule for which those cases stand is confined to facts not present in this proceeding. Very much more in point are *Matter of Smith* (182 Misc. 711) and *Matter of Tabbagh* (167 Misc. 156). In the first of these the testator had died a resident of Spain leaving a will containing specific instructions to the effect that it was to be governed by the laws of New York. He made no provision whatsoever for his wife but after the admission of the will to probate in the Surrogate's Court of Monroe County, the testator's adoption of the New York law was held to entitle the widow to elect her intestate share under section 18 of the Decedent Estate Law, a right she would not otherwise have possessed. (*Matter of Slade,* 154 Misc. 275.) Surrogate FEELY set forth the reasons for his ruling in *Matter of Smith* (*supra*, p. 716): " It is possible testator mistakenly intended to evade or transcend those domiciliary rights of election by submitting his estate to New York, instead of Spanish law, but such a mistake in a last will is not a ground for reforming the instrument. Had his will been made before September 1, 1930, he would have succeeded (see *Hutchinson* v. *Ross,* 262 N. Y. 381, 393), and his plans would have fitted together well. Our courts have recognized the right of such a testator to effectuate here, by submission of his personalty here, to our law, results he could not have accomplished had he left his estate to be governed by the law of his foreign domicile (*Matter of Tabbagh,* 167 Misc. 156). Having made his will after September 1, 1930, he unwittingly left it open for the widow to obtain more, rather than less; so there is no question presented of wrongfully depriving a spouse of a compulsory share."

In *Matter of Tabbagh* (167 Misc. 156), a case more nearly parallel to that at bar, Surrogate DELEHANTY upheld the validity of a bequest in trust in the will of a resident of France, despite the fact that testamentary trusts are prohibited under French law. The Surrogate rested his decision on the will's adoption of the New York law and said: (p. 158) " Testamentary trusts are said to be prohibited under the laws of France. Hence a declaration of the validity of the trust is sought here. The construction and validity of the provisions of the will disposing of deceased's assets in the United States are to be determined by the laws of this State. (Dec. Est. Law, § 47; Pers. Prop.

Law, § 12-a.) It is clear that under the laws of this State a valid trust was created."

Nothing contained in the recent decision of the Court of Appeals in *Rubin* v. *Irving Trust Co.* (305 N. Y. 288) is to the contrary. In fact the court's reference to the "center of gravity" theory of conflicts of laws and its citation of Professor Harper's article "Policy Bases of the Conflicts of Laws" (56 Yale L. J. 1155, 1168 n. 39, 1175 n. 63) would support the conclusion here reached had the result been based solely upon the common law and not, as in fact it is, exclusively upon the command of the statute.

For the reasons stated the court holds that the estate must be administered in conformity with the directions of the testator and the objections of the special guardian are overruled.

Submit decree on notice settling the account as filed.