Mr. Chief Justice Alvey
delivered the opinion of the Court:
The bill in this case was filed by the appellee, a corporation, against the appellants, setting up an assignment to the former of a particular fund, then remaining on deposit with the Treasurer of the United States, and to which fund the appellant also makes cl-aim, by virtue of what is alleged to be a prior assignment of such fund. The fund has, since the filing of the bill and the coming in of the answers, been withdrawn from the deposit with the Treasurer, and, with the consent of the parties and by order of court, placed on deposit in bank, to await the final determination of the question of right thereto. By the decree of the court below, the complainant was adjudged to be entitled to the fund, and the defendants have appealed. And the question, therefore, on this appeal is, to which of the parties does the fund of right belong?
The origin of the fund, and the-circumstances that gave rise to the conflicting claims of the parlies thereto, are the following:—
On August 14, 1890, John J. Cudmore entered into a contract, No. 1,270, with the District of Columbia, for the construction of certain sewers in the city of Washington. To enable Cudmore to prosecute the work thus undertaken, the National Bank of the Republic agreed to and did advance money to Cudmore, from time to time, in considerable sums; and as means of securing payment of the money thus loaned or advanced, and to be advanced, Cudmore, on August 23, 1890, executed a power of attorney to Daniel B. Clarke, the president of the bank, authorizing and empowering him “to demand, sue for, collect, receipt for, indorse his, said Cud-more’s, name, and to receive all sums of money, bonds, or other *119 valuables which are due, or may become due, owing or payable to me from the District of Columbia, for and on account of work done and to be done, under the provisions of contract, No. 1,270, for laying 12, 15, 18 and 21-inch pipe sewers on various streets in the District of Columbia.”
This power of attorney seems not to have been, in all respects, such as the bank deemed proper for its complete security, and therefore, on November 20, 1891, Cudmore was required to and did execute another power of attorney to said Clarke, the president of the bank, reciting his indebtedness to the bank as then being -$10,450.47 for moneys advanced to him by said bank for the purposes of carrying out his contracts with the District of Columbia or the Commissioners thereof, thereby constituting said Clarke his lawful attorney with full power and authority irrevocable, “to demand, ask, sue for, collect, receipt for, and receive all sums of money, bonds or other valuables which are due, or may become due, owing or payable to me from the District of Columbia for and on account of contract, No. 1,270, for laying, etc., pipe sewers on various streets in the District of Columbia, and for and on account of any other or extra work done by me for the District of Columbia, aside from, in addition to, and independent of said contract No. 1,270. And for the purposes aforesaid, I do hereby grant unto my said attorney full power and authority irrevocable, being coupled with an interest, to do and perform all and every act whatsoever requisite and necessary to be done in and about the premises,” etc.
Both of these powers of attorney were filed in the office of the Commissioners of the District, and were recognized and acted upon by those officials, and the money becoming due and payable to the contractor Cudmore, under his contract No. 1,270, was paid over to the bank or its president, under those powers, amounting to the sum of $20,924.06. But under the provision of the statute law, applicable to the District of Columbia, 10 per cent, of the amount payable *120 under the contract No. 1,270, amounting to the sum of $2,920.64, was required to be retained as guarantee fund to keep the work done upon the sewers in repair for five years. By provision of the statute, the Treasurer of the United States is made the commissioner of the sinking fund of the District of Columbia, and the percentage of the contract price of the work, thus required to be retained, is required to be paid over to the Treasurer, as the commissioner of the sinking fund, to be held by him until the expiration of the time prescribed, or, if the amount retained exceeds $100, it may be invested by the Treasurer in certain designated bonds, at the request and at the risk of the contractor. 24 Stat., Ch. 355, p. 501; 2 Sup. R. S. 559. In this case, the Commissioners of the District, on June 22, 1893, sent the amount retained on the Cudmore contract, No. 1,270, to the Treasurer of the United States, as the commissioner of the sinking fund of the District of Columbia. After this, that is to say, on September 6, 1894, Cudmore executed an assignment, in legal form, to the complainant, of all his interest in the amount retained under the contract, then in the hands of the Treasurer as commissioner of the sinking fund, and authorized the complainant to receive from the proper authorities of the United States or of the District of Columbia, the sum so retained, or the bonds in which it might be invested.
The first of the powers of attorney made to Clarke, as president of the bank, that dated August 23, 1890, was filed in the auditor’s office of the District of Columbia, August 28, 1890; and the second of those powers, that dated November 20, 1891, was filed in that office November 24, 1891; and both of said powers were transmitted to the first comptroller of the Treasury of the United States,— the first, August 28, 1890, and the second September 23, 1893. Copies of the originals of said powers of attorney were made and have been retained in the office of the auditor of the District since the originals were filed with *121 the first comptroller; and a copy of the second or last of said powers so filed with the comptroller was made and filed with the Treasurer of the United States, as commissioner of the sinking fund of the District, on January 19, or 20,1894. An amount larger than that recited in the power of attorney of November 20,1891, is still due and owing from Cudmore to the bank; and Cudmore is insolvent. The assignment of the retained fund made by Cudmore to the complainant appears to have been filed in the office of the Treasurer of the United States, on the day of its date, that is, September 6, 1894.
With these facts undisputed, the complainant filed its bill March 24, 1898, in which it is alleged that the complainant, in good faith, had purchased for valuable consideration, the claim of Cudmore to the retained fund, under the contract with the District of Columbia, and taken an assignment thereof; that said assignment was obtained September 6, 1894; and that the samé was deposited with the Treasurer of the United States, — the receipt of which was acknowledged by that officer, on the 8th of September, 1894, and was duly recorded in the office of said Treasurer. It is also alleged, that the complainant did not become aware of the existence of the power of attorney to Clarke, of November 20, 1891, until September 19, 1894; and that at the time, and before, complainant obtained the assignment of the claim for the money retained under the contract, no assignment, or transfer thereof, or power of attorney relating thereto, appeared upon the records of the office of the comptroller, and that, at the time the complainant purchased said claim for money retained, said power of attorney was not on file in the office of the commissioner of the sinking fund, nor did any reference thereto appear on the books of said commissioner.
It is then alleged that the power of attorney does not assign to Clarke or the bank the interest of Cudmore in and to said retained fund, nor does it authorize Clarke to demand *122 or receive such money so retained, for the use of the bank, but that said power relates solely and exclusively to those moneys payable under the contract, apart from and exclusive of the amount retained under the contract, as a guarantee fund for keeping the work in repair. It is further alleged, that the complainant purchased the claim to the fund without any notice of any claim thereto on the part of the bank, and the said bank or its president having failed to file said power of attorney, under which claim is made, was guilty of laches, and therefore the equity of the complainant is superior to that of the bank.
The answers of the bank and Clarke aver the facts to which we have already referred. It is averred and insisted that the power of attorney of November 20,1891, is a good and complete constructive equitable assignment of all the moneys and funds arising under the contract No. 1,270, and that said power of attorney was intended by Cudmore to include not only the entire proceeds or contract price of the work done under contract No. 1,270, but all other sums due the said Cudmore by the District of Columbia, by reason of any other contracts for work done or to be done. That the power of attorney of November 20, 1891, was filed with the Commissioners of the District or in their office, on November 24, 1891, and was transmitted therefrom to the first comptroller of the Treasury of the United States, September 23, 1893. They deny all claim to superior equity in the complainant, and insist that the power of attorney operates as a full and complete equitable assignment of the fund in question, and that they have done everything necessary to perfect said assignment.
The case was referred to the auditor, and he reported in favor of the complainant, and it was upon his findings and report that the decree of the court below was based.
With respect to the intent with which the power of attorney of November 20, 1891, was executed, there would seem to be no reasonable room for doubt. That the power was *123 intended as a security for the large sums of money advanced by the bank to Cudmore to enable the latter to carry on the work under his contract with the District, is made entirely plain, not only by the surrounding circumstances of the case, but by the recitals and the terms of the power of attorney itself. The power is made irrevocable, and by its terms it is declared that it is coupled with an interest; the interest being in the bank for whose use the money was appropriated, and which was authorized to be collected by the agency of its president. It is very well settled that a power of attorney coupled with an interest, or sustained by a contract, founded on consideration, can not be revoked by the grantor of the power, and may, consequently, confer a vested right or interest in the person by or for whom it is to be exercised, and who will be benefited by its execution. Walsh v. Whitcomb, 2 Esp. 565; Watson v. King, 4 Camp. 272; Gaussen v. Morton, 10 B. & Cr. 731; Knapp v. Alvord, 10 Paige, 205.
To constitute an equitable assignment of a chose in action, all- the authorities concur in holding that no particular words or special form is necessary. Indeed, it may be by parol, and, as a general rule, anything written, said, or done, in pursuance of an agreement, and for valuable consideration, or in consideration of an antecedent debt, to place a chose in action or fund out of the control of the owner, and appropriate it to or in favor of another person, amounts to an equitable assignment. Therefore, an agreement between a debtor and a creditor, that the debt shall be paid out of a specific fund coming to the debtor, will operate as an equitable assignment. And so an order given by a debtor to his creditor upon a person owing money to such debtor, or holding funds belonging to him, directing such person to pay the creditor out of such money or funds, will operate as an irrevocable equitable appropriation or assignment of such money or funds, or a sufficient part thereof, if made in consequence of a direct- agreement. This is the principle or doctrine settled by the leading cases upon this subject, of *124 Row v. Dawson, 1 Ves. Sr. 331, and Ryall v. Rowles, 1 Ves. Sr. 348; 3 Wh. & Tudor’s Lead. Cas. Eq. 380, 382, and the notes thereon. The principle of these cases has been adopted aud followed in numerous subsequent decisions, and by all standard text-writers, and is now the settled law upon the subject. Spain v. Hamilton, 1 Wall. 604, 624; 2 Sto. Eq. Juris.,oSecs. 1044, 1047; 2 Spen. Eq. 855 et seq.
But, inasmuch as things incorporeal, such as debts, are not susceptible of actual or manual delivery, therefore, in-order to perfect the assignment, and to secure protection to it against the claims of others dealing with either the assignor, or the debtor, it is necessary that the assignee should, without unnecessary delay, give notice of the assignment to the debtor, or the holder of the fund. Otherwise, a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignor, before such notice. Or, as said by the judges in Ryall v. Rowles, supra, and which has been in substance repeated in all subsequent cases, “that, in the case of a chose in action, the assignee must do everything towards having possession which the subject admits; he must do that which is tantamount to obtaining possession, by placing every person who has an equitable or legal interest in the matter under an obligation to treat it as his property. For this purpose, he must give notice to the legal holder of the fund; in the case of a debt, for instance, notice to the debtor is, for many purposes, tantamount to possession. If he omits to give that notice, he is guilty of the same degree and species of neglect as he who leaves a personal chattel, to which he has acquired a title, in the actual possession and under the absolute control of another person.” Dearle v. Hall, 3 Russ. 1; Spain v. Hamilton, 1 Wall. 621.
While not controverting the general doctrine that we have just stated, the complainant insists that the power of attorney relied on as an assignment, though it did operate as an assignment of the money actually received under it, *125 does not apply to or affect the fund retained and paid over to the Treasurer of the United States, as the commissioner of the sinking fund of the District; and if that contention be well founded, of course, the decree appealed from must be affirmed. This seems to have been one of the grounds upon which the auditor of the court below proceeded in reporting his findings in favor of the complainant. But we can not accede to that view of the case.
It is not controverted that the amount retained was a part of the contract price of the work done under the contract; and it would seem to be a perversion of the ordinary meaning of language to say, that the power to collect and receive all sums of money, bonds or other valuables which are due, or may become due, owing or payable to me, from the District of Columbia for and on account of work done and to be done under the provisions of contract No. 1,270, did not embrace and include the amount retained of the contract price of the work done, as a repair fund. That fund was no less a part of the contract price of the work than the part or parts thereof that had been paid during the progress of the work, or when it was completed. It was only a deferred payment to meet the possible exigencies of the work, during a defined period. That the fund to be retained under the contract was in the contemplation of the parties at the time of making the power of attorney, would seem to be clear from the terms employed in the power. Why confer power to demand- and receive bonds or other valuables that might become due the grantor of the power, under the contract, if it was not intended to embrace bonds into which the retained fund might be invested by the Treasurer, as the commissioner of the sinking fund, as provided by the statute ? These terms of the power could have no other application than to that form or condition of the fund retained, and manifestly that was the intention in the employment of those terms. And as to the effect of the construction placed upon the power of attorney in the office of the Treasurer, or as to any particular *126 practice that may have been observed in that office in regard to such documents; and the course that may have been pursued in regard to former contracts of the nature of No. 1,270, under which a similar percentage was retained; such facts can not be allowed to control the plain terms and clear meaning of the language employed in the present power of attorney. It is clear, we think, the power of attorney applies to and embraces the fund retained under the contract, as required by the statute, and which is the fund here in controversy.
It is next contended on the part of the complainant, that there was no sufficient notice given by the defendants to perfect the assignment of the fund to the bank, and that," consequently, though that assignment was prior in point of time, yet the assignment to the complainant, though posterior in date, was the first of which notice was given to the holder of the fund, and therefore is entitled to priority. This view, in respect to the rights of the parties, was taken by the auditor in his report, and, as we suppose, by the court also; as the auditor’s report was confirmed without qualification.
There is no question in regard to the fact of notice to the Commissioners of the District, of the power of attorney of November 20, 1891. That power of attorney was filed in the office of the District Commissioners, the original debtors, on November 24, 1891; and was transmitted to the first comptroller of the Treasury, U. S., September 23,1893 ; and from that office, upon the request of the cashier of the defendant bank, a copy of the power of attorney was sent to and filed with the Treasurer of the United States, as commissioner of the sinking fund, on January 19 or 20, 1894, — nearly eight months prior to the date of the assignment to the complainant.
The Commissioners, representing the District of Columbia, were the original debtors, and were the holders of the fund in controversy at the time, and for a considerable time after, *127 they received notice of the assignment to the bank. They did not pay over the reserved fund to the Treasurer, as commissioner of the sinking fund, until June 22, 1893. The fund, therefore, went into the hands of the Treasurer, as commissioner of the sinking fund, subject to the notice that had been received by the Commissioners. But apart from this consideration, and treating the Treasurer as the' legal holder of the fund, he received into his office, and which came to his personal knowledge, a copy of the power of attorney of November 20, 1891, on the 20th of January, 1894, and placed the same among the files of his office. It is urged, however, that because there was no entry made in the register kept in the office, in which the filing of such papers were entered or noted, the mere filing of a copy of the power of attorney did not operate as notice to perfect the assignment. But it is shown that both the Treasurer, and the clerk keeping the register in the office, read and scrutinized the paper, and because they could not satisfy themselves as to the proper construction to put upon it, it was concluded that it should not be registered, but was placed away in the files with other papers relating to the contract' of Cudmore with the District. The question, however, is not one of actual notice to-the complainant as subsequent assignee, but one of notice in fact to the debtor or legal holder of the fund affected by the assignment. The notice is required as means of protecting the debt or fund assigned in the hands of the debtor, or holder of the fund, as against subsequent demands and notice of third parties. In this case the bank, or its president, the grantee of the power, has done everything required in order to perfect the assignment, and has omitted nothing of which the complainant can rightfully complain. The fact that the power of attorney was not entered upon the registry in the Treasurer’s office is not a matter of which the complainant can take advantage to the prejudice of the bank. We are not aware of any positive law, apart from mere convenient official regulation, *128 that requires such registry to be kept. To have obtained certain, information in regard to the matter, the complainant or its agent, instead of-simply inquiring of the clerk and examining the registry book, should have gone to the Treasurer, as the commissioner of the sinking fund, and procured a search of the files in his office. If this had been done, the power of attorney would have been disclosed to the complainant.
It follows from what we have said that the decree of the court below must be reversed, and the cause be remanded that a decree be entered in favor of the bank, or of its assignee entitled to the fund, in conformfiy to the foregoing opinion. The cost to be paid by the appellee.

Decree reversed and cause remanded.