THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Trustee, Respondent, v. CENTRAL HANOVER BANK AND TRUST COMPANY, as Executor of JAMES F. A. CLARK, Deceased, Appellant-Respondent; AMERICAN TRUST COMPANY, as Executor of ESTELLE P. CLARK, Deceased, et al., Appellants-Respondents, and PRISCILLA JONES et al., Infants, by JOHN A. LYON, Their Guardian ad Litem, Appellants-Respondents, et al., Defendants.

First Department, January 29, 1943.

*George Clark* of counsel (*Taber and Parker,* attorneys), for defendants-appellants other than the executor of the will of James F. A. Clark, deceased, and other than the infant defendants-appellants, Priscilla Jones, Lester Jones, Jr., and Patricia Louise Jones.

*Albert Stickney* of counsel (*Arthur W. Siegrist* with him on the brief; *Larkin, Rathbone & Perry,* attorneys, for the defendant-appellant, Central Hanover Bank and Trust Company, as executor, etc., of James F. A. Clark, deceased.

*Erwin Bruce Hallett* of counsel (*John A. Lyon,* guardian ad litem; *Stanley H. Borak* with him on the brief), for Priscilla Jones et al., infants, defendants-appellants.

*Thomas A. Ryan* of counsel (*William Parsons* with him on the brief; *Milbank, Tweed & Hope,* attorneys), for plaintiff-respondent.

CALLAHAN, J.  The principal question presented upon this appeal is whether a power of appointment was validly exercised. The power was created in a separation agreement entered into in New York City on February 28, 1906, between James F. A. Clark and Estelle P. Clark, his wife. At that time both parties were domiciled in this State. The Colonial Trust Company of New York was designated trustee under said agreement.

Plaintiff, as corporate successor of said trust company, seeks settlement of its accounts as trustee. The various defendants, by their answers, raised issues concerning the validity of an attempted exercise of the power by Mrs. Clark in her will. These issues were tried before a referee whose report, holding that there was but a partial execution of the power of appointment, was confirmed, and judgment entered thereon. Defendants appeal in part.

In addition to numerous other covenants, the agreement of February 28, 1906, contained provisions requiring Mr. Clark to deposit with the trust company in New York City securities which would yield an income of not less than $25,000 per annum, to be paid to Mrs. Clark during her lifetime for the support of herself and an adopted daughter of the parties. The fourth article of the agreement contained the following provision creating the power of appointment:

" (b) The party of the second part shall have the right to dispose of, by will, securities, part of the trusts hereby created,

to the extent of the then market value of One Hundred and Fifty Thousand Dollars ($150,000). Upon her death, leaving any such will, the Trustee is hereby directed upon the probate thereof, to transfer to the Executor or Executors named in said will, securities to be selected by such Executor or Executors, of the then market value of said sum of $150,000. To the extent of such disposition the party of the first part hereby directs the Trustee so to dispose of such securities, or to sell securities, part of said trust, which will yield said sum of $150,000, and to transfer the proceeds thereof to such Executor or Executors. To the extent of such disposition this instrument shall be regarded as an irrevocable transfer of the principal of the trust estate hereby created in favor of the party of the second part.''

The agreement provided for the deposit of securities far in excess of $150,000 in value. The trust was to terminate on the death of Estelle P. Clark, and all securities, except those appointed by Mrs. Clark, were to be returned to the husband or his legal representatives.

Estelle P. Clark went to South Dakota shortly after 1906, where she obtained a divorce. She never remarried. For some time following 1906 she resided in Massachusetts, then in Europe; again in Massachusetts, and finally in 1922 she went to California, where she continued to reside until her death in 1937. James F. A. Clark had previously died in 1935. During all of its existence, the business situs of the trust was in New York City.

In 1936 Estelle P. Clark executed a will in California which has been admitted to probate by the courts of that State. In this will she attempted to dispose of the appointive estate by directing its use for the creation of various trusts. These trusts appear to be invalid under the New York law, in that they offend our statute against perpetuities (Personal Property Law, § 11), as well as the statute limiting the accumulation of income. (Personal Property Law, § 16.) We shall later refer to these invalidities in detail. The trusts which Mrs. Clark created by her will are said to be valid under the California law.

A preliminary question is presented as to whether the law of New York or that of California is applicable in determining the validity of the attempted exercise of the power of appointment.

The beneficiaries of Mrs. Clark's will contend that the law of her domicile when she executed her will (California) should

apply as to the substantive validity of the appointments she made thereunder. They cite many cases which they say support this contention. We find these cases distinguishable on one ground or another.

*Cross* v. *U. S. T. Co.* (131 N. Y. 330) applied the law of the testatrix's domicile. It involved testamentary disposition of the individually-owned and not appointive property.

*Chamberlain* v. *Chamberlain* (43 N. Y. 424) and *Hope* v. *Brewer* (136 N. Y. 126) involved testamentary trusts of personal property which testator directed be set up and administered in foreign jurisdictions, and the law of the place so selected was held controlling.

*Robb* v. *Washington & Jefferson College* (185 N. Y. 485) differs from the two cases last mentioned only in that the disposition involved was by deed *inter vivos* instead of by will. The holding was the same. But none of these cases involved the exercise of a power of appointment. An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which created the power. (*Matter of Harbeck,* 161 N. Y. 211.) It would seem to follow, in the absence at least of a contrary intention, that the law applicable to the deed should apply to the construction of the instrument exercising the power.

In *Matter of New York Life Insurance and Trust Co.* (209 N. Y. 585) it was held that New York law should be applied to the construction and effect of a will exercising a power of appointment granted by a donor domiciled in New York concerning property having its situs here, though the donee was domiciled in a foreign jurisdiction when she made her will exercising the power. Though there were facts in that case which permitted the trial court to find that the donee's intention was to have the New York law apply, the Court of Appeals in its brief memorandum opinion indicated that its holding was based on the reasoning in the case of *Sewall* v. *Wilmer* (132 Mass. 131). Reference to that decision shows that it was in turn, based squarely on the principle that the law of the domicile of the donor of the power controls. At pages 136, 137 the Massachusetts court said:

"It is true that, as to personal property at least, the construction and effect of a will, and the distribution thereby made of the testator's estate, are to be governed by the law of his domicil. (*Yates* v. *Thomson,* 3 Cl. & Fin. 544, 570, 585; S. C. 1 Sh. & McL. 795, 835. *Enohin* v. *Wylie,* 10 H. L. Cas. 1. *Harrison* v. *Nixon,* 9 Pet. 483. *Fellows* v. *Miner,* 119 Mass. 541, 544.)

But the property of which Mrs. Wilmer has a power of appointment is not her property, but the property of her father; and the instrument executed by her takes effect, not as a disposition of her own property, but as an appointment of property of her father under the power conferred upon her by his will. The domicil of the testator whose property is in question is therefore the domicil of the father. The property is held by trustees residing and appointed in Massachusetts, and must be distributed here, and the trustees cannot be compelled to account for it in Maryland or in any other State, even if they should be personally found there." (Citing cases.)

This court made a similar ruling in *Matter of Harriman* (217 App. Div. 733), where we affirmed a decision of the Surrogate's Court on its opinion (124 Misc. 320) applying the New York law to a California will exercising a power granted by a New York donor.

The appellants, who are beneficiaries under Mrs. Clark's will, contend, in effect, that as there was no gift of a power here, in that Mrs. Clark's rights were obtained for a valid consideration, the intention of the parties should control. They argue that an intention to have the California law control might be implied because the parties understood that Mrs. Clark might acquire a domicile outside of New York, and that, therefore, it was intended that the law of the jurisdiction wherein she was domiciled when she exercised the power of appointment was to prevail in determining the validity of the appointments made. This contention presents the main issue concerning this preliminary question of conflict of laws.

Consideration of the surrounding circumstances, as well as the provisions of the agreement, would appear to require the implication that it was the intention of the parties to have the New York law control. Surely this was so, at least as to all matters other than the execution of the power. The parties to the contract of February 28, 1906, were domiciled in New York; they selected New York as the place of performance throughout Mrs. Clark's lifetime, and the agreement provided for her executors to come to New York to select certain securities upon her death. After such selection these securities were to be sold by the New York trustee, and the proceeds transferred to Mrs. Clark's executors. The agreement of 1906 was to constitute a transfer of title when these steps were completed. These circumstances indicated that the parties intended that all of the contractual obligations were to be performed in New York. We fail to find any manifestation

of an intention that a different law was to apply to the exercise of the power. At the time the contract was made the parties did not contemplate that Mrs. Clark would move to California. The mere circumstance that she might acquire a domicile elsewhere would seem hardly sufficient to warrant the implication that the parties intended that the construction of her testamentary dispositions exercising the power was to depend upon the accident of Mrs. Clark's domicile in the future.

The agreement of February 28, 1906, as we have noted, involved the creation of an *inter vivos* trust, as well as a power of appointment. It called for the deposit of securities far in excess of the $150,000 over which Mrs. Clark was given power of testamentary disposition. The implication that the parties intended one law to control the administration of a life estate, plus the rights of Mr. Clark concerning the return of the nonappointive securities, and another law to control the disposition of the appointive estate, would seem unwarranted.

In *Hutchison* v. *Ross* (262 N. Y. 381) it was held that where a settlor domiciled in Quebec established in this State a trust of personal property, intending that the trust should be governed by the law of this jurisdiction, there was little reason why the courts should apply the law of the settlor's domicile. Thus the intention of the settlor was held to prevail, and the court further pointed out that at times such intention might be implied from the circumstances.

*Shannon* v. *Irving Trust Co.* (275 N. Y. 95) held that a settlor might by express provision in a deed of trust make applicable the law of his domicile rather than that of this State, which was the situs of the property. Although neither *Hutchison* v. *Ross* (*supra*) nor *Shannon* v. *Irving Trust Co.* (*supra*) involved any power of appointment, we find that to whatever extent the law governing *inter vivos* trusts may be applicable here, these cases support a holding that the New York law should control.

Having determined that the New York law is to be applied, we shall briefly review the will of Mrs. Clark, discuss separately the trusts thereby created, and point out in each instance why, in our opinion, they are invalid under our law. We shall also consider the remaining provisions of her will, and determine whether they effected the execution of the power.

In order to avoid prolixity, we eliminate numerous provisions contained in Mrs. Clark's will and refer only to the portions thereof essential to our discussion.

In the third article of her will Mrs. Clark specifically bequeathed a parcel of real property to her adopted daughter, Mrs. Carol Clark Morrison. In addition, she made a large number of specific bequests of personal effects to other beneficiaries named therein.

In the fifth article she recited the existence of an *inter vivos* trust previously executed between herself and the American Trust Company of California, and also referred to the existence of the agreement of 1906 granting her the power of appointment. By this article she gave $55,000 of the appointive property to the American Trust Company, to be added to the corpus of the *inter vivos* trust. In addition, she gave a certain apartment house located in Berkeley, California, to the trust company to hold for the life of her daughter, with a direction to pay all taxes, assessments and insurance out of the general trust funds.

Examination of the *inter vivos* trust indenture so sought to be incorporated by reference shows that it provided for trusts for the successive lives of Mrs. Clark's daughter (Carol Clark Morrison), her grandchildren, James Stuart Morrison and Sophronia Antoinette Morrison, and the survivor of them, and thereafter to the eldest nephew or niece in each of the families of two sisters and a brother of Mrs. Clark. The principal was to go to the last surviving nephew or niece, but there was no provision to cover the contingency as to who was to take, if at the time of the death of the two grandchildren, there were no surviving nephew or niece, or issue of them. There was a provision in this *inter vivos* trust indenture that during the life of Mrs. Morrison certain life insurance premiums on policies obtained for the benefit of the grandchildren were to be paid from the trust funds.

Passing without discussion the question as to whether the attempted incorporation of the *inter vivos* trust provisions by reference was a testamentary disposition within the power, it will be seen that the trusts thus created were clearly in conflict with section 11 of our Personal Property Law, because they were for more than one life in addition to Mrs. Clark's. It is argued that there was no total suspension of the power of alienation during the lifetime of Mr. and Mrs. Clark. We believe there was. But in any event it is clear that after Mr. Clark's death and during the remainder of Mrs. Clark's life there was such a suspension.

In measuring the suspension of the power of alienation, the instrument exercising the power of appointment and the instru-

ment creating it are to be read as if incorporated in one document. (*Fargo* v. *Squiers,* 154 N. Y. 250; New York Real Property Law, § 178.) In any event, none of the persons whose lives measured the trust set up under the fifth article was in being in 1906 other than Carol Clark Morrison.

For the foregoing reasons alone this trust would be invalid. It may otherwise conflict with our laws, though we need not so hold in order to find it ineffective. Other possible objections are that the directions for payment of taxes and other charges on real estate would seem to offend section 16 of our Personal Property Law, to the extent that they provide for invalid accumulation of income beyond a minority. (*Hascall* v. *King,* 162 N. Y. 134.) The direction as to payment of life insurance premiums out of trust funds would seem to be of doubtful validity for like reasons. The direction last referred to, at least in some respects, ran counter to the provisions in the last paragraph of section 16 of our Personal Property Law permitting the inclusion of insurance policies in trusts of personal property.

The trusts thus created may not be preserved, in any part, by the doctrine of judicial excision. Undoubtedly equity will, if possible, separate any valid trust from the invalid ones set up in a will, to carry out the general intention of the testator, and to prevent unlawful suspension of the power of alienation (*Matter of Hitchcock,* 222 N. Y. 57); but this step is permitted only where the dominant purpose of the testator is not defeated thereby. (*Matter of Saunders,* 262 App. Div. 578, 581.)

The trust set forth in the fifth article might be good for Mrs. Morrison's life, but if the intervening invalid life estates were judicially excised, we would be faced with uncertainty as to who the remaindermen might be, for the remainders were not only contingent, but impossible of ascertainment until the termination of the excessive trusts. Acceleration would not be feasible under such circumstances. The law does not accelerate remainders except in favor of the persons who would take them if the intermediate estate, expunged as illegal, had been allowed to run its course. (*Kalish* v. *Kalish,* 166 N. Y. 368, 375; *Matter of Durand,* 250 N. Y. 45, 55.) In addition, to cut off the grandchildren, would defeat the testamentary scheme. (*Matter of Durand, supra.*) Beyond all this we would be faced with the question of further invalidity because of unlawful accumulations.

The next provision of Mrs. Clark's will setting forth a trust is article seventh. It provides for a fund of $8,000 for the benefit of the two grandchildren above referred to. The income

from this fund is to be accumulated until the grandchildren reach the age of twenty-five years, when the principal is payable to them. In the event of the earlier death of either of the grandchildren, the principal is to go to and become part of a trust fund provided in the tenth article of the will (which we shall discuss at length hereafter).

It is clear that the trusts created under the seventh article are invalid. Neither of the beneficiaries was in being in 1906. The requirement for the accumulation of income beyond a minority would be invalid. (*Hawthorne* v. *Smith,* 273 N. Y. 291.) Other reasons for invalidity exist. That this trust may not be saved by an excision is so clear that it needs no discussion.

The eighth article of the will sets up a trust fund of $35,000 for testatrix's grandniece, Marion Daggett, who was born in 1917. The income is directed to be accumulated until the beneficiary is thirty years of age, then she is to receive the income of the augmented estate for life. If the grandniece does not attain her thirtieth year, a similar trust is created for a grandnephew, Stuart Daggett, Jr., who was born in 1914. If both beneficiaries die before attaining age thirty, then testatrix's nephew, Stuart Daggett, Sr., is given a life estate. In the event Mr. Daggett, Sr., is not then alive, upon his death the fund goes as provided in the tenth article. The invalidity of these trusts, and the impossibility of saving any part of them by judicial excision is apparent for the reasons heretofore indicated in discussing the trust set forth in Article V.

The ninth article of the will provides for certain general monetary legacies payable outright to seventeen named persons in specified amounts, totaling $59,700, after the requirements and directions of articles III, V, VII and VIII of the will are met and satisfied. The third article relates only to specific bequests of realty and personal effects from the individual estate of testatrix. Having determined that the other earlier trusts (Articles V, VII and VIII) are invalid in so far as New York law is concerned, we do not consider it our province to pass upon the necessity for, or possibility of, their satisfaction from the individual estate in California. The judgment appealed from upheld the bequests under Article IX as a valid exercise of the power of appointment, but did so solely by directing the marshalling of the assets. The referee stated that there were two funds available, to wit: Mrs. Clark's individual estate of approximately $41,000 and her appointive estate of $150,000. As the ninth article provided for payment

of the sums specified out of "any residue that may remain in my estate, including that over which I have any power of appointment," the referee reported that the equitable doctrine of marshalling of assets should be applied, and payment of the $59,700 directed out of the appointive estate. We deem that the judgment was erroneous in applying the doctrine referred to. Having found the earlier trusts invalid, we see no necessity for the marshalling of assets, assuming that that doctrine could be enforced where only one fund is available to the court attempting to apply it.

We assume that property existed to satisfy the specific bequests in Article III. All other bequests as to the satisfaction of which those in the ninth article were made conditional have been eliminated as invalid for our purposes. We have only the appointive fund in this jurisdiction, and those named in the ninth article are entitled to payment. Therefore, the judgment should direct payment from this fund.

The bequests under the ninth article pass directly to the respective appointees from the plaintiff-trustee. The executors of Mrs. Clark take no interest whatever in these gifts. (*Hirsch* v. *Bucki,* 162 App. Div. 659; *Matter of Walbridge,* 178 Misc. 32.)

While the instrument creating the power of appointment requires that the appointive estate shall be paid to the executor of Estelle P. Clark, it is clear (reading the instrument as a whole) that it was the intention that Mrs. Clark have unlimited power to name appointees. Her executors were merely intended to be the conduit through which the appointed property would pass to such appointees. Accordingly, we direct that the judgment be modified so as to provide that the sums referred to in the ninth article be paid to Mrs. Clark's executors solely for transmission to the persons mentioned therein.

The tenth article of Mrs. Clark's will purports to dispose of "All the rest, residue and remainder of my property * * * over which I have any power of appointment, also including all lapsed legacies, bequests or devises." This clause might have constituted an exercise of the power of appointment as to the funds which were the subject of the prior invalid trusts, were it not that the trusts created in article tenth again violate our statutes in the same respects as did the earlier ones. For the reasons stated in discussing the earlier trusts, the provisions of the tenth article were ineffective to create an exercise of the power of appointment.

A second residuary clause is found in Mrs. Clark's will in the eleventh article. Whether this article constitutes a valid exercise of the power of appointment under our law presents a much closer question. Article XI states: " Should any of the trusts herein provided for be held invalid, that portion of my estate included or intended to be included in the trust or trusts held to be invalid, together with such other portion of my estate, if any, as may not be disposed of hereunder, shall go and pass according to the laws of succession then in force in the State of California."

The learned referee held that the eleventh article of Mrs. Clark's will did not constitute a valid exercise of the power of appointment for two reasons: (1) that Article XI did not contain any express gift to a named person or persons, but left the determination of the identity of beneficiaries to the succession laws of a foreign State, all of which was in excess of the power granted, and (2) that, in view of the language used in Article XI, as contrasted with that used in earlier portions of the will, a lack of intent on Mrs. Clark's part to include the appointive estate was disclosed.

We disagree with the views of the referee with respect to both reasons upon which he based his conclusion. As to the first, we think it is sufficient to say that a gift to one's heirs under the intestacy laws of a particular State is ordinarily deemed to indicate as beneficiaries the person or persons who would be entitled to inherit under such laws at the time of the death of the testator. (*Matter of Bump,* 234 N. Y. 60.)

We are not troubled in this case with the question frequently presented as to the time as of which the appointment speaks, for here it clearly spoke as of Mrs. Clark's death.

We see no essential difference between a bequest to one's heirs, and a provision that the residue of the estate shall go and pass according to the laws of succession of a designated State. The power of appointment was general and broad enough to warrant disposition in this form.

As to the second ground upon which the referee relied, to wit: the phraseology of the eleventh article, we again disagree with the views which he expressed. It is true that in this article testatrix referred only to " my estate," whereas in several other instances she added words such as " including that over which I have any power of appointment." It is to be noted that, while Article X of the will referred to lapsed legacies, Article XI mentioned those that were invalid. It is reasonable to believe that two residuary clauses so drawn

were intended to be equally comprehensive. It would be unreasonable to suppose that the testatrix, in providing for an alternative provision as to invalidity of any trusts, would intend to omit the major portion of the property which went to make up these trusts. What the testatrix intended by Article XI we can spell out from language which she used, in the light of the attendant circumstances. (*Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Matter of Lynn*, 261 App. Div. 513; affd., 287 N. Y. 627.) That Mrs. Clark had knowledge of and intended to exercise the power of appointment is shown beyond doubt by many provisions of her will.

We have the compelling circumstance that Mrs. Clark was an estranged wife who was attempting to dispose of property given to her under a power of appointment from a former husband, with the knowledge that, in the event of her failure to exercise the power, a large sum of money would go to a second wife and the children of said marriage. We have the further circumstance that the appointive estate far exceeded in value the individual estate of the testatrix.

In the light of these circumstances, let us consider the rules of construction applicable. Even at common law, where a residuary bequest is not circumscribed by some clear expression in the will, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid disposition or other accident. (*Riker* v. *Cornwell*, 113 N. Y. 115, 127.) The law favors a construction which will prevent partial intestacy. (*Vernon* v. *Vernon*, 53 N. Y. 351; *Stokes* v. *Weston*, 142 N. Y. 433.)

Added to the common-law rules of construction, we have the command of a statute, for during all the times involved herein, there was in effect in this State section 18 of the Personal Property Law, which provided: " § 18. Power to bequeath executed by general provision in will. Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

Clearly there was no express provision in Mrs. Clark's will showing that she did not intend to exercise the power of appointment. Necessary implication was defined in *Lockwood* v. *Mildeberger* (159 N. Y. 181, 186), as follows: " Necessary implication results only where the will permits of no other inter-

pretation. Necessary is defined to mean: ' Such as must be; ' ' Impossible to be otherwise; ' ' Not to be avoided; ' ' Inevitable.' The intent not to execute the power, therefore, must not be implied unless it so clearly appears that it is not to be avoided."

Examining the language of Article X in the light of these rules, we find that the mere failure to specifically refer to the appointive estate in Article XI, though it was so referred to in other provisions of the will, does not necessarily require a construction that the appointive property was intended to be excluded. It may well be that the draftsman, having previously defined " my estate," by adding the description as to what was included therein, felt it unnecessary to continue repeating the definition. In any event, phrases such as " my estate " have frequently been construed by the courts of this State to include appointive property, although no particular reference is made to such property. (*Mott* v. *Ackerman*, 92 N. Y. 539; *N. Y. Life Ins. & T. Co.* v. *Livingston*, 133 N. Y. 125; *Lockwood* v. *Mildeberger, supra; Hirsch* v. *Bucki, supra; Matter of Lynn, supra.*)

In *McLean* v. *McLean* (174 App. Div. 152, affd., 223 N. Y. 695), a similar ruling was made. There the donee of a power attempted to appoint beyond the class limited by the donor. Though this disposition was held void, it was further held that the residuary clause in his will, which provided that all the rest, residue and remainder of " my estate " be given to the wife of donee, was sufficient as an exercise of the power of appointment, the wife being one of those within the limitation of the power.

It has been aptly said that where one has the use of income of land during life, with a power of disposition after death, it is natural for him to consider and treat the property as his own. (*Cumston* v. *Bartlett,* 149 Mass. 243, 250.)

While it is true that none of the wills involved in the cases cited used different phraseology in various portions thereof in describing property bequeathed, we do not consider that this circumstance so distinguishes the present will as to require us to hold that here under the ordinary canons of construction, an intention to exclude the appointive estate is necessarily to be implied. At most this difference in phraseology would cause us to inquire as to the reason for the absence of a more extended definition in Article XI. It would be improper to hold that that doubt could not be reasonably resolved in any way except in favor of a construction that the intention was to have intestacy as to the appointive property in case the trusts were

invalid. The provision of the statute is that the intent not to exercise the power is not to be implied unless such implication is not to be avoided.

There is nothing in the holding in *Guaranty Trust Co.* v. *Halsted* (245 N. Y. 447), relied on by the referee, contrary to our present views. In that case a power of appointment was reserved in a trust indenture. Other similar powers had been granted in various wills. The language used by the donee of these powers, in an instrument in which, it is claimed, he attempted their disposition, showed clearly by reference solely to the powers contained in the wills, that he intended to omit any exercise of the power reserved in the indenture. In addition, the court found that, even if section 18 of the Personal Property Law applied, the donee had not exercised the power in a manner consonant with the requirements of the indenture, and thus had failed to exercise it.

We hold that the residuary clause (Article XI) carried with it the appointive property previously attempted to be disposed of, but which was invalidly appointed.

The trial court found that under the law of California effective at the time of Mrs. Clark's death, Carol Clark Morrison (her daughter) would take as her legal successor, or sole heir. The judgment, therefore, should be modified by providing that the balance of $150,000 of the appointive estate after payment of the $59,700 referred to in Article IX of the will, be made to Mrs. Morrison directly; or, to comply with the letter of the provisions of the 1906 agreement, to the executor or executors of Mrs. Clark, solely for the purpose of transmitting the same to Carol Clark Morrison. If there is any dispute concerning the form that the judgment should take with respect to the directions for payment of any part of the appointed property, this question may be disposed of upon the order to be settled.

We find that the remaining issues discussed in the briefs were correctly decided, and the judgment with respect thereto should be affirmed.

The judgment should be modified as indicated, and as so modified, affirmed.

MARTIN, P. J., TOWNLEY and COHN, JJ., concur; UNTERMYER, J., taking no part.

Judgment unanimously modified as indicated in opinion, and as so modified affirmed.

Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.