Joseph A. Cox, S.
The decree admitting this testator’s will to probate restrained the executor from paying or satisfying any *220 legacy or distributive share until further order of the Surrogate. The executor now moves to have such restriction removed.
The facts essential to a decision are not in dispute. At the time of his death on January 2,1964, the testator was an American citizen domiciled in Switzerland. His will, which was executed in New York on November 6, 1961, attempted to exercise a power of appointment granted to this testator by the will of his mother and bequeathed his entire residuary estate to his second wife. Article tenth of the will reads as follows: “I direct that this will be submitted for probate in New York County, State of New York, United States of America, and that the provisions of this will shall be governed by the laws of the State of New York in accordance with section 47 of the New York Decedent Estate Law.”
The testator’s first wife, as the general guardian of two infant children, interposed objections in the probate proceeding. One objection concerned the effectiveness of the quoted text of the will since it was the contention of the general guardian that the testator’s property must be disposed of in conformity with Swiss law under which the infant children would be entitled to shares of the estate as forced heirs of the testator. This objection was not ruled upon in the probate proceeding but, because of the objection, the restrictive provision was placed in the probate decree.
Section 47 of the Decedent Estate Law reads in part as follows: ‘ ‘ Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death. Whenever a decedent, being a citizen of the United States or a citizen or a subject of a foreign country, wherever resident, shall have declared in his will and testament that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws.” This in effect is a codification of the maxim mobilia seguuntur personam with the added proviso that the intent of the testator is to prevail if he declares that his will is to be construed and regulated by the laws of this State.
Matter of Cook (204 Misc. 704, affd. 283 App. Div. 1047) involved a fact situation comparable to that here presented. In the Cook case the testator was a United States citizen domiciled in Cuba who directed in his will that it be probated in New *221 York and construed under the law of this State. In that case the claim of a child to a share of the estate as a forced heir under Cuban law was rejected by the courts, the holding being that section 47 of the Decedent Estate Law was controlling. Other decisions have enforced the intention of a testator to have the law of the situs of property control its disposition under his will (Harrison v. Nixon, 9 Pet. [34 U. S.] 483, 503; Matter of Vanneck, 158 Misc. 704; Matter of Stebbins-Vallois, 99 N. Y. S. 2d 402; Matter of Tabbagh, 167 Misc. 156) and in respect of inter vivos transfers in trusts it has been held that it is the settlor’s privilege to select the applicable law (Hutchison v. Ross, 262 N. Y. 381; Shannon v. Irving Trust Co., 275 N. Y. 95).
The objectant contends that the provisions of the treaty entered into between the United States and the Swiss Confederation in 1850 contravene and supersede section 47 of the Decedent Estate Law and the testator’s attempt to have his estate governed and distributed under New York law is ineffectual. If her contentions are correct and the decedent’s personal property wherever situated must be distributed pursuant to Swiss law, the infant children whom she represents in this proceeding will be entitled to their “ legitime ” shares of the estate as forced heirs. In support of her contention that the testator’s personal property must be distributed in accordance with Swiss law the objectant relies mainly upon an unpublished Swiss decision, Rougeron v. Rougeron, decided by the Cour de Justice Civile on November 4, 1958. The Swiss court there held that a decedent’s personal property must be distributed in accordance with the law of his domicile, that a will was ineffective insofar as it deprived a son of his “ legitime ” and that the attempt of the testator to make New York law govern the distribution of his estate pursuant to section 47 of the Decedent Estate law was ineffectual by reason of the treaty provisions.
The provisions of a treaty entered into between the United States and another sovereign power do take precedence over any State law and, when there is a conflict between a State law and a treaty provision, the rights acquired under the treaty supersede the State statute (Clark v. Allen, 331 U. S. 503, 517; Kolovrat v. Oregon, 366 U. S. 187; Consul Gen. of Yugoslavia v. Pennsylvania, 375 U. S. 395). However, the Swiss court’s interpretation of the treaty is restrictive in character and would tend to take away from American citizens the right to freely dispose of their property. This was not the objective of the treaty and its purpose was not to deny or destroy rights possessed by citizens of either country. The primary purpose of the treaty was to assure to the citizens of each country equality of treatment with *222 the nationals of the country in which they might reside. Article I of the treaty expressly provides for such “ reciprocal equality ” and gives the citizens of each Country, while domiciled in the other country and subject to its laws, the right “ to acquire, possess, and alienate therein property, (as is explained in article V); to manage their affairs; to exercise their profession, their industry, and their commerce; * * * they shall have free access to the tribunals, and shall be at liberty to prosecute and defend their rights before courts' of justice in the same manner as native citizens ’ \
Article V of the treaty states ¡ ‘ ‘ The citizens of each one of the contracting parties shall have power to dispose of their personal property within the jurisdiction of the other, by sale, testament, donation, or in any other mannerand their heirs, whether by testament or ab intestate, Or their successors, being citizens of the other party, shall succeed to the said property,' or inherit it, and they may take possession thereof, either by themselves or by others acting for them ” (emphasis added).
Article VI of the treaty contains the following language: “ Any controversy that may arise among the claimants to the same succession, as to whom the property shall belong, shall be decided according to the laws and by the judges of the country in which the property is situated.’’’ From any viewpoint the language of the treaty cannot be considered as restrictive or designed to take away the existing rights of an American citizen to freely dispose of his property in the United States.- It affirmatively assures an American citizen while domiciled in Switzerland of equality of treatment with Swiss nationals, confirms his right to dispose of even his property located in Switzerland by testament or otherwise and expressly provides that the law of -the situs is to prevail in any controversy as to the succession of his property. There is no language in the treaty that would indicate it was to have any extraterritorial effect which would extend its application to an American citizen’s personalty located in New York, Only by stretching the domiciliary rule to unreasonable limits can it be found that this decedent’s personal property in New York was subject to the Swiss laws of succession.
This court finds no conflict between section 47 of the Decedent Estate Law and the treaty entered into between the United States and the Swiss Confederation in 1850' and holds that the law of New York is applicable to the administration and distribution: of this decedent’s estate with respect to all property located in the United States. “ The American common law courts have resolved the issue’ of forced heirship of descendants *223 by generally disregarding restrictions on the testamentary freedom imposed by a domiciliary civil law country. Quite uniformly, forced heirship claims have been denied and the testamentary disposition given effect under the situs law in accordance with the testator's intention ” (46 Cal, L. Rev. 232).
Another objection of the general guardian concerned the validity and effectiveness of the testator’s attempted exercise of the power of appointment granted to him by his mother’s will. This objection is not properly raised in this estate. The appointed property is not part of this testator’s estate, it will not be distributed by the executor of this estate and the restrictions contained in the probate decree are not applicable to the appointive property (Matter of New York Life Ins. & Trust Co., 139 N. Y. S. 695, affd. 157 App. Div. 916, affd. 209 N. Y. 585; Bishop v. Bishop, 257 N. Y. 40; Matter of Harriman, 124 Misc. 320, affd. 217 App. Div. 733; Chase Nat. Bank v. Central Hanover Bank, 265 App. Div. 434; Dana v. Murray, 122 N. Y. 604; Farmers’ Loan & Trust Co. v. Kip, 192 N. Y. 266; Matter of Field, N. Y, L. J., May 21,1964, p, 17, col, 1).
The restrictions in the probate decree are removed. It must be recognized that it is the prerogative of the Swiss courts to control personal property within their jurisdiction if they do not choose to recognize the ruling of this decision (Matter of Gifford, 279 N. Y. 470) and this court does not intend its ruling to apply to any real property having a situs in Switzerland (Matter of Good, 304 N. Y. 110; Matter of Osborn, 151 Misc. 52; Matter of Warburg, 38 Misc 2d 997).