**ESTATE of Jules L. VOIGNIER.**

Supreme Judicial Court of Maine.

Argued March 17, 1992.
Decided June 2, 1992.

tests shall not be admissible....

Peter L. Murray (orally) and Judith M. Peters, Murray, Plumb & Murray, Portland, for appellant.

Edwin A. Heisler (orally), Richardson & Troubh, Portland, and Paul L. Beach (orally), Kimmel & Beach, Kennebunk, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Rose Voignier, the widow of Jules L. Voignier and income beneficiary of his testamentary trust, appeals from an order of the York County Probate Court (*Brooks, J.*) denying her motion to remove Warren Bittner as personal representative of the Estate of Jules L. Voignier and to surcharge him for losses to the estate, and from a separate order denying her costs and attorney fees to be paid out of the estate. Bittner, in his capacity as remainderman, cross-appeals the court's denial of his request for an award of attorney fees. We conclude that the Probate Court did not abuse its discretion in refusing to remove Bittner as personal representative and did not err in finding insufficient evidence on the motion for surcharge. The court, however, should have awarded Rose her costs and attorney fees. Therefore, we vacate in part and remand to the Probate Court.

Jules L. Voignier died in April of 1987 with substantial assets.[1] In his will, he left

---

1. Included in the estate were approximately $180,000 worth of "Nuveen" securities that Rose claimed properly belonged to her and that were the subject of a separate suit in Superior Court. *See Voignier v. Bittner,* 609 A.2d 709 (Me.1992), decided this date. In yet another case in Superior Court, Bittner is suing Rose for the return of approximately $100,000 in gold bars that Bittner

his entire estate in trust, with his widow, Rose, named as income beneficiary of the trust. The will instructed the trustee to "make such use of the Trust Estate and the income therefrom for the benefit of my wife as a spouse might reasonably make of his own property for the benefit of his wife." The trust corpus was to be distributed upon Rose's death to various remaindermen, the most prominent of whom was Jules Voignier's nephew, Bittner, who was nominated and appointed personal representative of the estate.

From the beginning of the estate administration, Rose, as the income beneficiary of the trust, sought to have paid to her the income that was earned by the estate during the period of its administration prior to the assets being turned over to the trustee. Animosity soon developed between Rose and Bittner, and communication between the parties became difficult. Bittner did not make any form of payments to Rose. In May 1988, Rose petitioned the Probate Court for payment of the income and a hearing was held in December of 1988. At the hearing, Bittner agreed to and did pay Rose $50,000, although he made no further payments. In August 1988, Rose again petitioned the court for payment of the income. After a hearing in December 1989, the court ordered Bittner to pay "the entire income earned by the estate to the widow." Bittner proposed to pay Rose the income less state and federal taxes and less half of all attorney fees, personal representative's fees, and appraisal fees paid by the estate up to that time. Rose petitioned the court to instruct Bittner to pay her all the income less only the taxes attributable to the income. After a hearing in March of 1990, the court ordered Bittner to pay to Rose, on or before March 16, 1990, all the income less the taxes and any estate expenses properly attributable to income earned by the estate. The court further ordered Bittner to make payments of income to Rose on a monthly basis in the future.

Although failing to meet the March 16th payment deadline, Bittner paid Rose $50,-000 in April and $49,000 in May. Accompanying the May payment, was an explanation by Bittner that he had subtracted from the amount paid to Rose half of all attorney, personal representative, and appraisal fees that had been incurred by the estate during his administration because he felt it was not feasible to allocate expense between income and principal. The monthly payments continued for a short period of time, after which Bittner began to turn over the estate assets to the trustee and ceased making them.

In addition to the controversy surrounding the payment of income to Rose, the parties disagreed on whether certain rental property (the Frazier Pasture Property) owned by the estate should be sold or the low rental rates increased in order to achieve a higher rate of return. Bittner did not sell the property or raise the rent because it was occupied by friends of Jules Voignier, who, Bittner contends, wanted them to remain there at the low rental. Rose also alleges that Bittner failed to make prompt payment of several small bills properly chargeable to the estate, and delayed transferring title of the family car to Rose.

In April of 1990, Rose filed a motion to remove Bittner as personal representative, to hold him in contempt of court, and to surcharge him for failure to maximize estate income. She alleged that Bittner failed to sell the Frazier Pasture Property because he hoped to inherit it and had mismanaged the estate for his own personal benefit to her detriment. In May, Bittner filed a motion seeking the court's approval of his method of subtracting half of all the estate fees from the payment. The two motions were consolidated and heard in February of 1991.

In its decision, the court found the evidence insufficient to warrant the removal of Bittner as personal representative. The court did find that Bittner's withholding of income was unjustified, but also found that Rose actually suffered no harm because of

contends belong to the estate but are in the possession of Rose.

the delay.[2] The court further found that the lack of cooperation and communication between Bittner and Rose was primarily due to a personality conflict between Bittner and the attorney who served as Rose's counsel and personal advisor. Finding the other alleged grounds for removal to be minimal, and finding that the administration of the estate was nearly concluded, the court declined to remove Bittner or to hold him in contempt. The court further found that Rose failed to demonstrate sufficient proof of damages resulting from Bittner's handling of the Frazier Pasture Property and so declined to surcharge Bittner.[3]

In a later order, after petitions were filed by both Rose and Bittner (in his capacity as remainderman), the court refused to award attorney fees to either party, concluding that "neither party has suffered a disadvantage in this case for want of ability to pay their own litigation expenses." Both Rose and Bittner made timely appeals to this court.

## I.

### REMOVAL

■ Rose contends that because Bittner has breached his fiduciary duties and because ample grounds exist for his removal, the Probate Court should have removed him. It is Rose's burden, however, to convince the court that Bittner should be removed. We are unpersuaded on this record that the Probate Court's failure to do so constituted an abuse of its discretion.

The Probate Code provides that

[c]ause for removal exists when removal would be in the best interest of the estate, or if it is shown that ... the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or

has mismanaged the estate or failed to perform any duty pertaining to the office....

18–A M.R.S.A. § 3–611(b) (1981). The primary duty pertaining to the office of personal representative is to settle the estate according to the terms of the probated will as expeditiously and efficiently as is consistent with the best interests of the estate and its successors all the while observing the standard of care applicable to trustees. 18–A M.R.S.A. § 3–703(a) (1981); see 18–A M.R.S.A. § 7–302 (1981) (trustee "shall observe the standards in dealing with the trust assets that would be observed by a prudent person dealing with the property of another."); see Estate of Baldwin, 442 A.2d 529, 532–37 (Me.1982). We agree with Rose that Bittner breached his fiduciary duty and that grounds existed on which the Probate Court could have based a decision to remove him as personal representative. The delays by Bittner in making payments to Rose were found by the court to be "unreasonable and deserving of some penalty," and those findings are amply supported in the record.

■ Not all violations of duty by the personal representative require removal, however. Estate of Tessier, 468 A.2d 590, 596 (Me.1983). The Probate Court has broad discretion in removing or declining to remove a personal representative and its decision is reviewed for an abuse of that discretion. See Estate of Robbin, 230 Mont. 30, 747 P.2d 869, 871 (1987); Estate of Murphy, 336 So.2d 697, 698–99 (Fla.App. 1976). Bittner, in delaying the payment of income to Rose, disregarded an order of the court and failed to discharge a duty of his office, see 18–A M.R.S.A. § 3–611(b). That delay, however, was Bittner's only violation of his fiduciary duty found by the court. The court made no finding that

2. The court found that Rose in fact benefitted from the delay because under the trust, the amount of income payable to her was discretionary with the trustee, whereas during the administration of the estate, the estate was required by the court's order to pay to Rose all of the income it received.

3. The court also denied Bittner's request that he be allowed to subtract half of all the estate fees

from the payment of income to Rose. The court ruled that because it was Bittner's burden to prove what expenses were "properly attributable" to income, and because he had proven that only $7500 was so attributable, he could deduct from the income payable to Rose, in addition to the income taxes, only $7500, instead of half of the fees as he proposed.

Bittner mismanaged the rental property as alleged by Rose, or that Rose suffered any damage. The court found other alleged grounds for removal to be minimal. The court further concluded that the difficulties in communication and the related lack of cooperation between Bittner and Rose were "primarily" due to a personality conflict between Bittner and one of Rose's attorneys, and that the administration of the estate was nearly concluded.

Implicit in the court's refusal to order the removal of Bittner is a finding that such a removal would not be in the best interest of the estate, requiring, as it would, the appointment of a successor personal representative to close out the estate. The Probate Court was in the best position to address the necessity for removal and its impact on the estate. Although grounds for removal pursuant to section 3–611(b) were present, and it would have been within the court's discretion to remove Bittner as personal representative, we cannot say that the Probate Court abused its discretion in deciding not to order removal. *Estate of Tessier*, 468 A.2d at 593.

## II.

### SURCHARGE

■ Rose also argues that Bittner should have been surcharged for income lost because he failed to maximize the income potential of the Frazier Pasture Property by increasing rents or selling the property. Even if Bittner were under a duty to do so, the court made no finding that Bittner violated such a duty and Rose failed before the Probate Court to prove any damages beyond mere speculation that a higher rate of return could have been achieved. Absent proof of such damages, it was not error for the Probate Court to deny Rose's motion to surcharge Bittner. *See Estate of Tully*, 545 A.2d 1275, 1278, 1280 (Me.1988); *see also Estate of Tessier*, 468 A.2d at 595.

4. 18–A M.R.S.A. § 1–601 (1981) states in pertinent part:
   In contested cases in the original or appellate court of probate, costs may be allowed to either party, including reasonable witness

## III.

### ATTORNEY FEES

■ In its order on the petitions of Rose and Bittner (as remainderman) for payment of their attorney fees by the estate, the court based its denial on the fact that neither party had been disadvantaged by a lack of ability to pay their own litigation expenses. In doing so, the court applied the wrong standard.

A court may order that attorney fees and certain other expenses may be charged to the estate "as justice requires." 18–A M.R.S.A. § 1–601 (1981).[4] The primary concern of the court in awarding fees and expenses, however, should be whether the litigation has been beneficial to the estate, and not, as the Probate Court held, whether the litigants have the ability to pay their own attorney fees. *See Estate of Brideau*, 458 A.2d 745, 748 (Me.1983).

■ Bittner breached his fiduciary duty to Rose, and Rose has been forced to sue him and to spend several years in litigation to force him to pay her the income to which the court decided she was entitled. In this case, it is clear that Rose's actions were required to insure compliance with the court's orders regarding payment of income, and that she is entitled to be reimbursed for her costs and attorney fees in litigating the issue of her entitlement to income payments. Therefore, justice requires that Rose's attorney fees and expenses incurred in forcing Bittner to pay her the income that the court determined properly belonged to her be paid out of the estate. *Estate of Stowell*, 595 A.2d 1022, 1026 (Me.1991).

We affirm, however, the court's denial of Bittner's request for attorney fees as remainderman. Although the court recited Bittner's ability to pay as a factor in its refusal to award the attorney fees, the court in a previous order found that Bitt-

fees, cost of depositions, hospital records or medical reports and attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires.

ner's entry in the litigation as remainderman with separate counsel was not beneficial to the estate. The court found that Bittner as remainderman merely took the same position as Bittner as personal representative, "namely, to oppose whatever position has been taken by the widow." Justice does not require that we disturb the court's decision to deny payment of his fees.

The entry is:

Judgment vacated in part. Remanded to the Probate Court for calculation and award of Rose Voignier's reasonable expenses and attorney fees incurred in litigating the issue of her entitlement to income payments. In all other respects, judgment affirmed.

All concurring.