**Matter of ESTATE OF H. Dudley WRIGHT.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 1993.

Decided Feb. 16, 1994.

---

Carol Ann Lundquist (orally), Strout & Payson, P.A., Rockland, William C. Knowles (orally), Verrill & Dana, Portland, for appellants.

Robert H. Stier, Jr. (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Holly Wright and Dana Wright Holland (the "Children") appeal from the York County Probate Court's (*Brooks, J.*) finding that Swiss law would give effect to a provision in the Will of H. Dudley Wright (the "Testator") electing Maine law to govern the administration of his estate. The Estate of H. Dudley Wright (the "Estate") contests the position of the Children and cross-appeals from the Probate Court's decision and order awarding attorney fees to the Children. The Estate, in its brief to this Court, submitted new affidavits from experts on Swiss law which were not considered by the Probate Court. The Children have filed a motion to strike these affidavits and those portions of the Estate's brief which discuss them. We affirm the judgment of the Probate Court.

The Testator executed his Last Will and Testament on January 11, 1992 which provided that Maine law was to apply to the administration of his estate. The Testator died on January 18, 1992 in Maine. The will did not provide for any distribution to the Children (who were the issue of a previous marriage), although it did provide for distributions to the Testator's wife and to the Testator's other children. The Children who were not provided for in the will were the beneficiaries of trusts set up by the Testator in 1960. The Testator's estate included interests in property located in France and Switzerland. The focus of the Children's argument is that they are entitled to forced shares as provided by Swiss law. Contrary to the initial assertion of the Estate, the Probate Court determined that the Testator was domiciled in Switzerland, not in Maine. Thus, Swiss law determines the validity of the choice-of-law provision. The Children argue that Swiss law would not give effect to a choice-of-law provision of a U.S. citizen domiciled in Switzerland. The Estate took the counter argument—that Swiss law would give effect to such a choice-of-law provision. The Probate Court determined that a Swiss court would give effect to such a provision. In addition, the Probate Court awarded attorney fees and expenses to the Children pursuant to 18–A M.R.S.A. § 1–601 (1981).

### Swiss Law

■ M.R.Civ.P. 44A, incorporated into probate proceedings by M.R.Prob.P. 44A, states that a determination of foreign law "shall be treated as a ruling on a question of

law."[1] Our review of the Probate Court's decision on the issue of foreign law is de novo. *See* Richard H. Field, Vincent L. McKusick & L. Kinvin Wroth, 1 *Maine Civil Practice* § 44A.3 at 619 (1970); *cf., Matter of McLinn*, 739 F.2d 1395, 1398 (9th Cir.1984); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2446 at 414; 5 James W. Moore et al., *Moore's Federal Practice* ¶ 44.1.05 (2d ed. 1985).

■ The issues presented in this appeal are determined by an 1850 Swiss–United States treaty (the "Treaty") and a Swiss federal law enacted in 1988. The Treaty,[2] which deals partly with probate issues, provides:

> Any controversy that may arise among the claimants to the same succession, as to whom the property shall belong, *shall be decided according to the laws and by the judges of the country in which the property is situated.* (emphasis added).

At the time the Treaty was entered into, Swiss law did not allow foreigners domiciled in Switzerland to adopt a choice-of-law provision in their wills. Sometime after 1850, Swiss law began to allow such provisions. This allowance of choice-of-law provisions currently appears in Article 90 of the Swiss Federal Law on Private International Law ("Article 90"), enacted in 1988, which provides:

> The estate of a person whose last domicile is in Switzerland is subject to Swiss law. *A foreigner can nevertheless through a last will and testament or an irrevocable contract regulating the succession subject his estate to one of his national laws.* This stipulation becomes ineffective if at

the time of death he is no longer a citizen of this State or has become a Swiss citizen. (emphasis added).

The Children argue that "laws" in the Treaty refers to substantive law and not to conflict-of-law rules. As such, they argue that Article 90, which is a conflict-of-law rule, cannot be applied to this case through the Treaty. Thus, the Children conclude that the substantive Swiss Civil Code, which imposes forced shares in their favor, is applicable. The Estate claims that the Treaty includes conflict-of-law rules. Both parties agree that if the Treaty incorporates Article 90, the Testator would be lawfully permitted to choose Maine law to govern the distribution of his Estate. Thus, the main issue is whether the Treaty refers to conflict-of-law rules, therefore allowing Article 90 to validate the Testator's choice-of-law provision.

Two decisions of Swiss cantonal courts hold that the Treaty applies to "substantive" law and not to conflict-of-law rules.[3] Both decisions found choice-of-law provisions in wills of U.S. citizens domiciled in Switzerland to be invalid. However, these holdings are not dispositive since they are decisions of cantonal courts, not federal courts. In Switzerland, federal courts have final authority and are not bound by cantonal decisions when ruling on federal law. Further, the persuasiveness of these cantonal decisions is undermined because Switzerland, a civil law country, does not recognize the concept of *stare decisis*, by the fact that the cantonal decisions are not recent pronouncements, and by the fact that two decisions of the New York Surrogate Court have held differently.[4]

1. M.R.Civ.P. 44A provides, in part:

   ... The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Maine Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

2. Convention of Friendship, Reciprocal Establishments, Commerce, and for the Surrender of Fugitive Criminals, Nov. 25, 1850, United States–Swiss Confederation, art. VI, 11 Stat. 587, 591.

3. *Kirk*, 109 J.T. III 72 (1961) (relying on *Rougeron*); *Rougeron*, 81 S.J. 598 (1959) ("Therefore

the Swiss law which is applicable according to article VI of the Treaty of 1850 is the substantive law; it does not include the conflict-of-law rules ... which alone would allow [a choice of] american law for the devolution of an Estate normally governed by Swiss law."); Although Article 90 was not enacted until 1988, at the time of both of these decisions there was a similar provision in Swiss law that allowed foreign citizens domiciled in Switzerland to utilize choice-of-law provisions.

4. *In re Schneider's Estate*, 198 Misc. 1017, 96 N.Y.S.2d 652 (1950), adhered to 198 Misc. 1017, 100 N.Y.S.2d 371 (1950), held that the Treaty included Swiss conflict-of-law rules. The decision reads:

In the absence of *stare decisis*, a Swiss federal court, in attempting to interpret the Treaty, would give some consideration to the opinions expressed in legal commentary. The Estate's expert, to whom the Probate Court attached the better reasoning and greater credibility, testified that most modern Swiss scholars and governmental authorities believe that the Treaty should be interpreted to include Swiss conflict of law rules. After reviewing the testimony and credentials of both party's experts, we also find the testimony of the Estate's expert most persuasive.

Finally, we recognize that "[t]he primary purpose of the treaty was to assure to the citizens of each country equality of treatment with the nationals of the country in which they might reside...." *In re Estate of Prince*, 267 N.Y.S.2d at 141–42. A finding that a U.S. citizen domiciled in Switzerland is not entitled to adopt a choice-of-law provision, which Swiss law enacted subsequent to the Treaty's adoption allows to all other foreign domiciliaries, would run counter to this purpose.

After reviewing the evidence that was presented to the Probate Court, we find that a Swiss federal court would hold that the Treaty includes conflict-of-law rules and that Article 90 applies to U.S. citizens who are domiciled in Switzerland. Thus, we find that a Swiss court would give effect to the Testator's choice-of-law provision.

"It is apparent that nothing contained in the text of ... Article [VI of the Treaty] prevents either of the signatory nations or states thereof from formulating its own rules of internal law *and* of conflict of laws. The treaty merely directs, as does the common law of this State, that initially a reference must be made to the laws of the situs. But the conflict of laws rules and the rules concerning the rights and privileges of foreign nationals and domiciliaries are as much a part of the "laws" of the situs as are its internal laws...."
96 N.Y.S.2d at 660. Note, however, that the court made its decision based, in part, on the fact that no Swiss case had yet ruled on this issue. *Id.* at 661.; *In re Estate of Prince*, 49 Misc.2d 219, 267 N.Y.S.2d 138 (1964) allowed a U.S. citizen domiciled in Switzerland to provide that property located in the U.S. be disposed of according to N.Y. law. The court, which noted its

## Motion to Strike

The Estate presents, for the first time on appeal, the affidavits of Swiss legal scholars to further support its view of Swiss law. Since we find that the evidence that was before the Probate Court supports the Estate's view of Swiss law, we need not decide whether M.R.Civ.P. 44A allows the introduction of new affidavits on appeal. Accordingly, we dismiss the Children's motion to strike without reaching its merits.

## Award of Attorney Fees

■ "Generally, the allowance of attorney fees and costs rests within the sole discretion of the Probate Court." *Estate of Whitlock*, 615 A.2d 1173, 1178 (Me.1992); *e.g., In re Estate of Stowell*, 595 A.2d 1022, 1026 (Me. 1991); *In re Estate of Roach*, 595 A.2d 433, 438 (Me.1991). However, "such discretion exists only as it may be authorized by statute." *Estate of Brideau*, 458 A.2d 745, 747 (Me.1983); *see e.g., Estate of Voignier*, 609 A.2d 704, 708 (Me.1992); *Estate of Reynolds*, 581 A.2d 809, 810 (Me.1990). The general standard of reviewing a Probate Court's decision on a request for fees pursuant to 18–A M.R.S.A. § 1–601 (1981) is the "abuse of discretion" standard. *e.g., Estate of Voignier*, 609 A.2d at 707; *In re Estate of Roach*, 595 A.2d at 437. However, in determining whether the Probate Court has exceeded the authorization of 18–A M.R.S.A. § 1–601, this Court employs an "error of law" standard of review. *In re Estate of Stowell*, 595 A.2d at 1026; *See Estate of Voignier*, 609 A.2d at

disapproval of the Swiss *Rougeron* decision, stated:
... the Swiss court's [in *Rougeron*] interpretation of the treaty is restrictive in character and would tend to take away from American citizens the right to freely dispose of their property. This was not the objective of the treaty and its purpose was not to deny or destroy rights possessed by citizens of either country. The primary purpose of the treaty was to assure to the citizens of each country equality of treatment with the nationals of the country in which they might reside.... It must be recognized that it is the prerogative of the Swiss courts to control personal property within their jurisdiction if they do not choose to recognize the ruling of this decision and this court does not intend its ruling to apply to any real property having a situs in Switzerland.
267 N.Y.S.2d at 141–42 (citations omitted).

708; *Estate of Whitlock,* 615 A.2d 1173, 1178 (Me.1992).

18–A M.R.S.A. § 1–601 allows attorney fees to be awarded, in contested cases, "as justice requires." The only caveat in the statute is that "[i]n those cases where a will is being contested *on the grounds of undue influence or mental capacity,* attorney's fees . . . shall not be allowed to the party contesting the will if he is unsuccessful." (emphasis added). In this case, neither undue influence nor lack of mental capacity is claimed.

■ *Estate of Voignier,* 609 A.2d 704, 708 (Me.1992) sheds light on the "as justice requires" standard by stating: "[t]he primary concern of the court in awarding fees and expenses . . . should be whether the litigation has been *beneficial to the estate. . . .*" (emphasis added). Although *Voignier* finds that litigation required to force the payment of income to a beneficiary "benefitted the estate," it does not expressly define the "benefit the estate" standard. Instead it refers to *Estate of Brideau,* 458 A.2d 745, 748 (Me. 1983), which equates "benefit the estate" with "good faith."[5] We have also recognized that 18–A M.R.S.A. § 1–601 was designed to discourage speculative claims and nuisance actions. *Estate of Brideau,* 458 A.2d at 747.

In its decision and order, the Probate Court awarded attorney fees to the Children after finding that they "acted in good faith in the presentation of a strong and close case on the issue of domicile." In making this finding, the Probate Court recognized our *Voignier* decision and applied *Brideau's* good faith approach to the "benefit of the estate" standard. The Estate claims that the Probate court committed an error of law by applying a "good faith and close call" standard instead of the "benefit to the estate" standard dictated by *Voignier,* and that litigation pursued to thwart a testator's intent cannot be "beneficial to the estate." They claim that the Children's suit aimed to thwart the Testator's intent and does not benefit the estate. Additionally, the Estate argues that since the Children's action, if successful, would have increased the Children's distributive shares while imposing greater tax liabilities on the Estate, there would be no benefit to the estate.

The Probate Court did not commit an error of law. The court's decision expressly recognized *Voignier's* "benefit to the estate" standard and it relied on *Brideau* in order to apply the "benefit to the estate" standard. The Probate Court's finding that the Children's action was made in "good faith" and was a "close call" is consistent with the rationale of *Voignier* and *Brideau* and enhances the policy behind 18–A M.R.S.A. § 1–601 of preventing speculative and nuisance claims. The fact that 18–A M.R.S.A. § 1–601 prevents "losers" from collecting attorney fees only if their claim is one asserting undue influence or lack of mental capacity supports the Probate Court's finding that attorney fees can be awarded, in certain circumstances, for unsuccessful claims not sounding in undue influence or lack of mental capacity. Finally, the assertions by the Estate that actions aimed at thwarting a testator's intent or which increase the tax liability of the estate cannot "benefit the estate" reflects an incomplete and partial assessment of the interests of the estate and is unsupported by court opinion or statute.

The Probate Court correctly applied the "benefit to the estate" standard and it did not abuse its discretion in awarding attorney fees to the Children.

The entry is:

Judgment affirmed.

All concurring.

---

5. In *Estate of Brideau,* 458 A.2d at 748, this Court expressly adopted the following rationale of a Florida Court:

"can it be said that it was not of some benefit to the estate to have both the proponent and the heirs . . . represented by able and industrious attorneys acting in good faith and earnestly representing their respective sides of the controversy in their capacity of attorneys for their respective clients and also as honorable Officers of the court, to the end that the question of the validity of the purported will be thoroughly tried out and determined?"
(quoting *Watts v. Newport,* 151 Fla. 209, 218, 9 So.2d 417, 421 (1942)).